**R.W. THOMAS and Kevin Kosub, Appellants,**

v.

**Winfred McNAIR, Appellee.**

No. 13–92–662–CV.

Court of Appeals of Texas, Corpus Christi.

July 28, 1994.

872

Charles Manning, Beeville, for appellants.

Michael J. Knight, Knight & Knight, Beeville, for appellee.

Before SEERDEN, C.J., and GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

R.W. Thomas and Kevin Kosub appeal from a judgment ordering the sale and partition of jointly owned property and enjoining foreclosure of a mortgage lien. By seven points of error, appellants complain that the trial court erred by refusing to allow them to foreclose on the mortgage, by awarding appellee a judgment for expenditures, and by denying them a recovery for conversion and fraudulent filing of bankruptcy. Appellants also challenge the partition of sale proceeds and the finality and correctness of the judgment. Appellee asserts a single cross-point. We affirm the trial court's judgment.

Thomas and Kosub were tenants in common of 5.74 acres of land located in Bee County. Appellee, Winfred McNair, started living on the property with appellants sometime in September 1987, after he retired from Champlin Oil Company. The evidence reflects that the property was appraised at $5,250 in August 1987. At the time, the only structures located on the property were a small house, a barn, and a water well. Thomas, Kosub and McNair agreed that a larger house and an aviary for a bird business should be constructed on the property.

On October 8, 1987, Thomas and Kosub conveyed a one-third interest in the property to McNair. At the same time, McNair executed a $40,000 promissory note to NBC Bank, South Texas, N.A. The note was secured by a Deed of Trust executed by McNair, Thomas and Kosub. According to the Deed of Trust, the note was given partially in renewal and extension of the balance of $6,348.39 left owing on the purchase money note dated December 15, 1982, executed by Thomas and Kosub, and payable to Leonard J. Svajda, from whom appellants purchased the property. The parties testified, however, that at the time, the balance of the purchase money note was $3,605.91 and that the net proceeds of the loan went to construct the new house. The sum of $33,651.61 was deposited in a joint account. The parties dispute how the note was to be repaid.

McNair testified that the parties started talking about retiring and building a house in Bee County as early as 1986. McNair commuted between Corpus Christi and Bee County in July and August 1987, and in September 1987, after he retired, he moved out to the property. McNair paid between $8,000 and $10,000 to improve the small house before he moved in. McNair placed $22,000 of his own funds in a joint account with Thomas, and appellants were to borrow their share of the costs from the bank. McNair testified that he agreed to sign the note because Thomas' financial statement reflected insufficient collateral and Kosub was unemployed. According to McNair, the parties agreed 1) that McNair would finance the start-up costs for the bird business, including the construction of the aviary and the purchase of the bird stock, 2) that after McNair had been reimbursed for his expenses, the parties would share equally in the bird business profits to pay off the note, and 3) that one-half of the note would be paid from the proceeds of the sale of Thomas' Corpus Christi house.

Appellants disagree with McNair. According to appellants, McNair promised to construct the new larger residence on the property at his own expense in return for their assistance in constructing the new house and their permission to construct and operate a bird business upon the property. Thomas testified that McNair agreed to incur all the construction costs and that McNair assured him that neither Thomas nor Kosub would ever have to pay anything on the note.

Whatever agreements existed between the parties prior to October 1987 were not in writing. Appellants pleaded the Statute of Frauds, TEX.BUS. & COM.CODE ANN. § 26.01 (Vernon 1987), as a defense to McNair's claims that the parties had made certain oral agreements regarding how to repay the loan and reimburse him for costs.

The evidence reflects that disagreements arose between the parties in April and May 1988, after construction of the new house had been completed. McNair complained of having to pay all the living expenses and 75–80% of the utilities. McNair testified that Thomas and Kosub demanded he pay off the loan and reconvey his one-third interest in the property back to them. McNair also testi-

fied that he was concerned about appellants' drug use on the property and that he had started to fear for his life. McNair left the property in November 1988 and returned the following month to remove the birds and his remaining personal belongings.

On September 9, 1988, the bank allowed the parties to extend the due date of the note to September 10, 1989. McNair, Thomas and Kosub agreed to pay the note according to the terms of the extension agreement. The new agreement provided that Thomas and Kosub would be primarily liable on the note even though they had not signed the original note. The new agreement required eleven monthly payments of $600.00 each, with the first payment due on October 10, 1988, and a balloon payment of $38,492.47 due on September 10, 1989. The record reflects that McNair paid half of the October payment and that appellants made the rest of the monthly payments. Appellants assert that in order to prevent foreclosure,[1] they purchased the note on March 7, 1990 and obtained a transfer of lien from the bank. Appellants argue that they did not pay off the note.

Appellants subsequently delivered a notice of default to McNair and demanded that he pay the balance of the note. No payment was received. On June 11, 1990, appellants notified McNair that they would seek nonjudicial foreclosure if payment was not received by June 25. On June 18, McNair sued appellants for partition and for debt (quantum meruit and quasi-contract). In order to prevent foreclosure and on the advice of counsel, McNair, on June 28, filed for bankruptcy under Chapter 13 of the Bankruptcy Act. On July 2, McNair advised the trial court of the automatic stay provisions of 11 U.S.C. § 362, and on July 18, he filed a notice of removal of this case to the bankruptcy court. Appellants answered by general denial on August 3.

On May 6, 1991, the bankruptcy court remanded the case to the district court for trial. The bankruptcy court also enjoined appellants from foreclosing on their purported lien. Appellants obtained new counsel and countersued for foreclosure of the purported lien, breach of contract, conversion, and Rule 13 sanctions.

On January 14, 1992, the cause was tried to the court. The trial court, having determined that the property was not susceptible to partition, ordered the property sold and the proceeds of the sale partitioned. The original judgment was signed by the trial judge and filed with the clerk of the court on May 12, 1992. However, the trial judge mistakenly omitted the date that he signed the judgment. On August 10, 1992, the trial judge signed a corrected judgment. The corrected judgment states as follows:

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED by the Court that the property is ordered sold, either at public or private sale, for a sales price of not less than $100,000.00, unless the parties agree to a lower price or the Court orders a lower price. The notice and advertisement or listing for sale will be made published on or before sixty (60) days after this judgment becomes final. After payment of all expenses of sale, the net proceeds up to $120,000.00 will be divided by awarding sixty (60%) percent of the proceeds to the Plaintiff, WINFRED McNAIR, and forty (40%) percent of the proceeds to R.W. THOMAS. All net proceeds in excess of $120,000.00 should be divided one-third (⅓) to WINFRED McNAIR, one-third (⅓) to R.W. THOMAS, and one-third (⅓) to KEVIN KOSUB.

IT IS FURTHER ORDERED that the Court costs will be assessed sixty percent (60%) against WINFRED McNAIR and forty percent (40%) against R.W. THOMAS. The parties will be denied any recovery for attorneys' fees, and all other causes of action and requests for relief or damage are denied.

IT IS FURTHER ORDERED that the Defendants, R.W. THOMAS and KEVIN KOSUB, will be enjoined from pursuing

---

1. The record contains a Notice of Foreclosure advising the parties that the bank's substitute trustee would sell the property at auction on February 6, 1990. The record also includes a letter from the bank to Thomas and Kosub evidencing an agreement not to foreclose on the scheduled date.

any attempt to foreclose the purported mortgage on the property and shall commit no waste and keep the property in a good state of repair, natural wear and tear and damage by unavoidable casualty excepted.

IT IS FURTHER ORDERED that the property be insured in an amount not less than the appraised tax value of the property, with the party or parties paying for said insurance to be reimbursed their prorata share of the costs from the proceeds of the sale.

IT IS FURTHER ORDERED that in the event the property does not sell within 12 months from the date the judgment becomes final, it will be sold at public auction on the steps of the Bee County Courthouse upon 30 days notice to the highest bidder.

All other relief not expressly granted herein is denied.

The court entered findings of fact and conclusions of law on July 27, 1992. On August 6, 1992, appellants requested but were refused additional and amended findings of fact and conclusions of law. By letter dated October 2, 1992, and in response to appellants' notice of past due findings of fact and conclusions of law filed after entry of the corrected judgment, the trial court adopted the findings of fact and conclusions of law which it had previously filed on July 27, 1992.

### FINALITY OF JUDGMENT

■ By their sixth point of error, appellants contend that the judgment fails to determine all relief to which the parties may be entitled, in violation of TEX.R.CIV.P. 301.[2] Appellants contend that the judgment fails to state whether the "purported mortgage" remains viable as an encumbrance on the property, which party or parties are required to insure the property, and who should pay the taxes pending sale.

■ As a general rule, a judgment is not appealable unless it is final, disposing of all parties and all issues raised by the plead-

ings and evidence so as to finally resolve the dispute among the parties. *North East Indep. School Dist. v. Aldridge,* 400 S.W.2d 893, 895 (Tex.1966). A partition case, unlike other proceedings, has two final judgments and both are appealable as a final judgment. *Griffin v. Wolfe,* 610 S.W.2d 466 (Tex.1981); *Carr v. Langford,* 144 S.W.2d 612, 613 (Tex. Civ.App.—Dallas 1940), *aff'd,* 138 Tex. 330, 159 S.W.2d 107, 108 (1942).

> In a partition suit two judgments are rendered. The first decree determines: the share or interest of each of the joint owners or claimants; all questions of law or equity affecting title; and appoints commissioners and gives them directions as may be necessary and appropriate. TEX. R.CIV.P. 760, 761. The second decree approves the report of the commissioners and allocates to the respective parties their separate shares or tracts. TEX.R.CIV.P. 769. The rights and matters determined in the first decree are final, and it is appealable as a final judgment. (citations omitted).

*Benson v. Fox,* 589 S.W.2d 823, 828 (Tex.Civ. App.—Tyler 1979, no writ). *See Rittgers v. Rittgers,* 802 S.W.2d 109, 113 (Tex.App.— Corpus Christi 1990, writ denied); *Taub v. Kahn,* 646 S.W.2d 570, 571 (Tex.App.—Houston [1st Dist.] 1982, no writ); *Mansfield v. Davenport,* 362 S.W.2d 912, 913 (Tex.Civ. App.—San Antonio 1962, writ ref'd n.r.e.).

■ Pursuant to Rule 770, a trial court must order the sale of property incapable of partition and determine the respective interests or shares of the persons entitled thereto. After the sale, the court enters an order of disbursement dividing the proceeds of the sale among the persons entitled thereto, according to their respective interests. *See Hoover,* 515 S.W.2d at 408. Accordingly, where the court determines either that the property is susceptible to partition or that the property is incapable of partition and a sale is ordered, the preliminary decree is final and appealable. The trial court has continuing jurisdiction to enter new orders as

---

**2.** TEX.R.CIV.P. 301 states in relevant part as follows:

The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity....

the necessity arises in a partition suit. *See Pfeffer v. Meissner,* 286 S.W.2d 241, 246 (Tex.Civ.App.—Galveston 1955, writ ref'd n.r.e.).

■ Upon appeal from the second judgment in a partition suit, matters determined by the first decree cannot be reviewed. *Marmion v. Wells,* 246 S.W.2d 704, 705 (Tex. Civ.App.—San Antonio 1952, writ ref'd); *Cyphers v. Birdwell,* 32 S.W.2d 937, 938 (Tex. Civ.App.—Texarkana 1930, writ ref'd). *See Hoover v. Materi,* 515 S.W.2d 406, 408 (Tex. Civ.App.—El Paso 1974, writ ref'd n.r.e.) (appellants waive review of determinations made under first decree by having waited to appeal from second judgment after sale of property).

It is the preliminary judgment entered in accordance with Rule 770 from which appellants now appeal. Appellants compare the present situation with that in *Hoover v. Materi.* The *Materi* case also concerned the division of proceeds of a sale of property owned by tenants in common, on which there existed an outstanding balance of $10,000 on the purchase money note, which was secured by a deed of trust lien on appellee Materi's one-half interest. The preliminary judgment awarding each co-tenant[3] an equal share of the real estate and ordering the property sold was affirmed on appeal. *Hoover v. El Paso Nat'l Bank,* 498 S.W.2d 276 (Tex.Civ. App.—El Paso 1973, writ ref'd n.r.e.). After the sale, Hoover filed a motion with the trial court, asking the trial court to consider the purchase money note and lien when it partitioned the proceeds of the sale. The trial court denied Hoover's motion and ordered half of the proceeds paid to each co-tenant. Hoover appealed, arguing that proper adjustment for the $10,000 lien should have been made.

The *Materi* court accepted the "generally recognized rule" that mortgages or other liens encumbrancing the undivided interest of a co-tenant will, in the case of a partition sale, attach to the co-tenant's share of the proceeds of such sale, and the purchaser at the partition sale takes the property discharged of the lien. *Materi,* 515 S.W.2d at

408; 59 Am.Jur.2d *Partition* § 193, p. 919; 68 C.J.S. *Partition* § 204, pp. 337–338; Annot., 93 A.L.R. 1267 at 1284. The court concluded that despite Hoover's disadvantage in bidding against Materi at the Sheriff's sale, he waived the opportunity to raise the issue after the sale was over.

> Had the issue been timely raised the trial Court *could* have required in its judgment providing for the Sheriff's sale, that if Appellant was the successful bidder, the first $10,000.00 of the proceeds of the sale allocated to Appellee be used to pay off the lien placed on the property of Appellee. [emphasis added].

*Materi,* 515 S.W.2d at 408. The *Materi* court, quoting 68 C.J.S. *Partition* § 144b, p. 239, stated:

> In actual partition the court *may* declare that an encumbrancer has a valid lien on the interest of one of the tenants in common; or, if a sale is found necessary, the court *may* ascertain the amount due and order it paid out of the distributive share of the encumbrancing tenant, and this may be done even after the sale in partition. [emphasis added].

*Materi,* 515 S.W.2d at 408. Since the subject of the lien was not raised until after the trial court's final determination of the parties' respective share of the proceeds of the sale, the *Materi* court held that the trial court did not err by entering an order of disbursement awarding the appellant one-half of the proceeds. *Id.*

The *Materi* case is distinguishable from the instant case. In the instant case, 1) the lien was timely raised, i.e., prior to the preliminary decree ordering the sale and determining the respective interests, and 2) the parties seeking relief, via foreclosure, are also mortgagees under the purported lien.

Appellants challenge the finality of the judgment under Rule 301, not Rule 770. The principal issue thus becomes whether a preliminary judgment, entered by a trial court pursuant to Rule 770, must determine all the interests affecting title to the property and "give the part(ies) all the relief to which (they) may be entitled either in law or equi-

---

**3.** The term "co-tenant," as used herein, means tenant in common.

ty," under Rule 301. We hold that a trial court, which determines by preliminary judgment the necessity of sale and respective interests of each party in a partition suit, does not have to ascertain the amount that is owed on a lien and does not have to order that the lien be paid out of the distributive share of the encumbrancing co-tenant. Because of the preliminary nature of the first judgment, it remains within the power and discretion of the trial court to address these matters after the sale. *Materi*, 515 S.W.2d at 408. The trial court, however, must determine in its final order of disbursement all interests relating to the property in question and address all issues, including encumbrances on the property, which were raised at trial prior to judgment.

We conclude that appellants' sixth point of error is premature. Accordingly, appellants' sixth point of error is overruled.

## INJUNCTION AGAINST FORECLOSURE

■ By their first point of error, appellants complain that there is no evidence, or insufficient evidence, to support the trial court's order enjoining them from foreclosing the mortgage lien. Appellants argue that McNair's right to partition is encumbered by the deed of trust and the accompanying right of foreclosure which appellants hold as the bank's successors-in-interest. Appellants contend that the deed of trust enabled any co-tenant to acquire the lender's lien and foreclosure rights, and that by ordering the sale, the court nullifies or refuses to enforce the parties' contract in this respect. We find these arguments without merit.

■ A co-tenant may compel a partition of jointly owned real property. Tex.Prop. Code Ann. § 23.001 (Vernon 1984). The right to partition is absolute and was never intended to interfere, *per se*, with contracts, express or implied, between co-tenants modifying or limiting such right. *See Long v. Hitzelberger*, 602 S.W.2d 321, 322–323 (Tex. Civ.App.—Eastland 1980, no writ) (lease contract acted as implied agreement not to partition); *Benson v. Fox*, 589 S.W.2d 823, 825 (Tex.Civ.App.—Tyler 1979, no writ); *Odstrcil v. McGlaun*, 230 S.W.2d 353, 354–55 (Tex.

Civ.App.—Eastland 1950, no writ) (By deed containing power of attorney granting full power to execute mineral leases, grantor impliedly agreed not to partition). Permissible defenses that a defendant in a partition suit may urge include any matter operating as an estoppel against the plaintiff. An express agreement not to partition will be honored by the courts, and an agreement against partitioning will be implied when the granting of such relief would destroy the estate sought to be partitioned. *See Benson v. Fox*, 589 S.W.2d at 825 (no express agreement not to partition, and expense to relocate mobile homes does not constitute destruction of estate); *Lichtenstein v. Lichtenstein Bldg. Corp.*, 442 S.W.2d 765, 769 (Tex.Civ.App.— Corpus Christi 1969, no writ) (lease, deed of trust, and note do not amount to an implied agreement not to partition).

The record before us reveals no express agreement, either written or oral, against partition. We find no express agreement against partition within the terms of the deed of trust, note, or any other written document in the record. Nor can we declare an implied covenant to exist from the nature of the parties' circumstances establishing outstanding duties and obligations pursuant to a contract to convey property. Appellants have failed to show reliance upon McNair's actions, thereby failing to prove estoppel. *See id.* at 769.

Appellants argue that *Long v. Hitzelberger* supports their contention that the deed of trust enabled any co-tenant to acquire the bank's lien and foreclosure rights and effectively resulted in an implied contract limiting each co-tenant's right to partition. The *Long* case involved joint owners of certain oil and gas leases and a written contract for the drilling of wells. The consideration for the contract was the drilling of two wells within a specified time period. The Eastland Court of Appeals denied partition, concluding that to allow a partition either in kind or by sale would defeat the outstanding contractual obligations to one of the co-tenants. 602 S.W.2d at 322. The court held that an agreement not to partition must be implied since the completion of a second oil well was re-

quired before the co-owners could retain their interest in the leases. *Id.* at 323.

■ The *Long* case is distinguishable from the present case. Here, we have tenants in common of real property who executed various loan agreements, including a deed of trust, none of which incorporate language indicating an express or implied waiver of the co-owner's right to partition. Notwithstanding the disputed terms concerning costs of construction and repayment of the loan, the parties' agreement to construct a new house and aviary is uncontroverted. The record reflects that the house was substantially completed and that the bird business was in operation. Further, we find no evidence in the record that a partition ordered by the court will destroy the estate sought to be partitioned. *See, e.g., Benson v. Fox,* 589 S.W.2d at 826 (evidence of mobile homes placed together insufficient to show implied agreement not to partition; no evidence that partition would destroy estate).

> It may sometimes be inequitable to one or more of the joint owners if another co-owner is permitted to enforce partition of jointly owned property; but this is one of the consequences which one assumes when he becomes a co-tenant in land. If he does not provide against it by contract, he may expect his cotenant to exercise his statutory right of partition at will.

*Moseley v. Hearrell,* 141 Tex. 280, 171 S.W.2d 337, 339 (Tex.1943). A court applies the rules of equity in determining *how* property is to be partitioned. *Id.* at 338–39. We conclude that the trial court exercised its equitable power by enjoining appellants from foreclosing on the purported lien pending sale of the property.

■ Appellants further contend that by executing a transfer of lien, the bank conferred upon them the attendant rights to foreclose against McNair's interest. The Transfer of Lien states, in pertinent part, as follows:

> For value received, Holder of the Note and Lien transfers the Note and Lien, together with any other liens and superior title held by Holder securing payment of the Note, to Transferee without representation, warranty or recourse of any kind, either express or implied.

The Transfer of Lien refers to the original note and deed of trust dated October 8, 1987. As we previously noted, appellants are jointly and severally liable, as co-obligors, to pay the note according to the terms of the Extension of Real Estate Note and Lien. Although Thomas admitted that he and Kosub paid off the note and that the note was thereby extinguished, appellants contend that the real estate lien survives and enables them to foreclose on McNair's interest in the property.[4]

■ Because of the preliminary nature of the judgment, we conclude that it is unnecessary to review the merits of appellants' argument that the real estate lien survives and enables them to foreclose on McNair's interest in the property, until the trial court enters its final order and makes such findings of fact and conclusions of law as are necessary after sale of the property. The trial court, in its final order, must address the

---

4. Thomas testified as follows:

> Q: You sold your house and this is in contemplation of paying off the $40,000 or approximately $40,000 note?
> A: Right.
> Q: And what you did was to assign the note which was secured by your old house in Corpus Christi to the bank?
> A: Uh-huh.
> Q: And then there was some more money that was also paid; is that right?
> A: I guaranteed half of it and Mr. Kosub paid the other half out of his savings account.
> Q: Do you know how much he paid?
> A: I think it was $19,000 and something.
> Q: At that point the NBC note was extinguished?
> A: Is dead; a dinosaur.

> Q: However, there was still a matter of the lien?
> A: Of what?
> Q: There was still the matter of the lien?
> A: The lien was still good. They didn't sell us a dead horse. They sold us a good piece of paper.
> Q: All right. Your idea being that you could foreclose upon the one-third interest of Mr. McNair because he had not paid the note; is that right?
> A: Oh, definitely. Definitely. Otherwise it would be a travesty of justice. I think it would breakdown our entire capitalistic system of justice.

Thomas further testified that he paid $39,750.31 to purchase the note held by the bank and that he incurred $900 in closing costs.

merits of appellants' claims. Should the trial court find that appellants hold a valid lien, it may ascertain the amount due and order it paid out of appellee's share of the sale proceeds. The purchaser at the partition sale takes the property discharged of the lien. Appeal may be taken from the trial court's second and final order.

Accordingly, we find no error in the trial court's order enjoining appellants from attempting to foreclose on any purported mortgage. Appellants' first point of error is overruled.

■ By their second point of error, appellants contend that the trial court erred by using its equity powers to compensate McNair for expenditures made and to save McNair from a bad investment and improvident gifts, because McNair's hands were not clean.

■ Appellants, for the first time on appeal, attempt to raise the "unclean hands" defense theory.[5] They contend that the trial court erred by using its equity powers to allow partition of the property in light of McNair's alleged 1) default on the note (causing the risk of foreclosure by the bank and the sale of Thomas' Corpus Christi home), 2) wrongful institution of bankruptcy proceedings to prevent foreclosure (despite his admitted ability to pay the note, thereby causing appellants to incur legal fees to defend the suit), 3) conversion of appellants' personal property, and 4) purposeful infliction of emotional pain on Kosub and his mother (by alleging that Kosub had acquired immune deficiency syndrome (AIDS)). Appellants further contend that McNair neither pleaded nor proved that there is no adequate remedy which he could avail himself of as efficiently or practically as partition, and that McNair neither pleaded nor proved any fraud, accident, mistake, or overreaching by appellants. In the interest of justice, we will address this issue.

■ It is a matter within the sound discretion of the trial court to determine whether McNair has come into court with clean hands. *Kostelnik v. Roberts,* 680 S.W.2d 532, 536 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Grohn v. Marquardt,* 657 S.W.2d 851, 855 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). The party who complains that his opponent is in court with unclean hands because of the latter's conduct in the transaction out of which litigation arose, or with which it is connected, must show that he himself, and not some third person, has been injured by such conduct, in order to justify the application of the principle. *Omohundro v. Matthews,* 161 Tex. 367, 381, 341 S.W.2d 401, 410 (1960); *Gillen v. Diadrill, Inc.,* 624 S.W.2d 259, 263 (Tex. App.—Corpus Christi 1981, writ dism'd). The doctrine is applied to one whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing. *Ligon v. E.F. Hutton & Co.,* 428 S.W.2d 434, 437 (Tex.Civ.App.— Dallas 1968, writ ref'd n.r.e.); 34 Tex.Jur.3d *Equity* § 32 (1984). The clean hands maxim should not be applied when the defendants have not been seriously harmed and the wrong complained of can be corrected without applying the doctrine. *Norris of Houston, Inc. v. Gafas,* 562 S.W.2d 894, 897 (Tex. Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.); *Rodgers v. Tracy,* 242 S.W.2d 900, 905 (Tex.Civ.App.—Amarillo 1951, writ ref'd n.r.e.).

■ Appellants contend that the evidence shows conclusively that McNair's hands were not clean and that his wrongdoing caused injury to appellants. Appellants allege that McNair defaulted on the note and clearly hoped that the bank would foreclose and force appellants from their homestead, and that Thomas had to sell his Corpus Christi home as a result. We hold that this evidence, even if taken as true, is insufficient to show that the court erred by granting the equitable remedy of partition. Moreover, even though appellants requested additional findings of fact, the trial court refused to issue any findings related to McNair's al-

---

**5.** We note that the defense of unclean hands need not be pleaded, and the doctrine may be applied by the court *sua sponte. Green v. Mead-* *ows,* 517 S.W.2d 799, 811 (Tex.Civ.App.—Houston [1st Dist.] 1974), *rev'd on other grounds,* 524 S.W.2d 509 (Tex.1975).

leged default on the note. Since the court omitted findings relating to appellants' ground of defense of unclean hands, we must presume that the court made such findings as would support the judgment. TEX. R.CIV.P. 299.

■ As for appellants' allegations of conversion, wrongful institution of bankruptcy suit, and purposeful infliction of emotional pain, the unclean hands doctrine cannot be used as a defense since the alleged unlawful or inequitable conduct is merely collateral to the plaintiff's cause of action. *See Grohn*, 657 S.W.2d at 855.

■ In addition, we hold that appellants have waived any objection based on whether McNair, in seeking equitable relief, has an adequate remedy at law. At the hearing on the merits, appellants produced no evidence that McNair had an adequate remedy at law. Thus, the issue may not be raised on appeal. *See Gause v. Gause*, 430 S.W.2d 409, 413 (Tex.Civ.App.—Austin 1968, no writ) (appellant waives claims regarding defect in pleadings when not raised by motion or exception); *American Standard Life Ins. Co. v. Denwitty*, 256 S.W.2d 864, 869 (Tex.Civ.App.—Dallas 1953, writ dism'd) (that appellant had equitable remedy by way of bill of review cannot be raised for first time on appeal; must be raised prior to hearing of bill on its merits); *Rivers v. Campbell*, 51 Tex.Civ.App. 103, 111 S.W. 190, 192 (Tex.Civ.App.—San Antonio 1908, writ ref'd). Appellants do not challenge the court's conclusion of law that McNair was entitled to exercise the equitable remedy of partition by sale and to receive contribution for the monies he expended, nor do they properly challenge the court's findings of fact under a separate point of error.

■ Beyond appellants' allegations of inequitable conduct on the part of McNair, appellants have failed to show how they were damaged. *See Omohundro*, 161 Tex. at 381, 341 S.W.2d at 410 (court found no evidence of improper use of information; such use aided rather than injured complainant); *Gillen*, 624 S.W.2d at 263 (appellant did not meet the *Omohundro* test). We find no showing of unjust enrichment, unfair advantage, or other form of profit earned by McNair as a result of the court's granting of partition. Furthermore, even though there may be no authority for the proposition that equity may compensate a party for poor investments and improvident gifts, as appellants argue, there is likewise no authority for the reverse precept. "[O]ne who by innocent mistake delivers his property to another—no matter how stupid or negligent he may have been in doing so—cannot be said to have such unclean hands as to bar him from demanding the return of his property or its value." *Ligon v. E.F. Hutton & Co.*, 428 S.W.2d at 437.

Based on our review of the evidence, we cannot say that the trial court, sitting as a court of equity, abused its discretion by ordering the sale of the property and partitioning the proceeds as it did notwithstanding appellants' contentions, even if true. Appellants have failed to show any specific facts indicating a clear abuse of discretion by the court, and we find no evidence in the record to indicate that the court acted in an arbitrary or unreasonable manner. Appellants' second point of error is overruled.

■ By their third point of error, appellants challenge the legal and factual sufficiency of the evidence to support the court's order that McNair receive sixty percent of the net proceeds up to $120,000, and that Kosub receive only one-third of the net proceeds in excess of $120,000. Alternatively, appellants contend that the trial court's order that McNair receive sixty percent of the net proceeds up to $120,000 and that Kosub receive only one-third of the net proceeds in excess of $120,000 is against the great weight and preponderance of the evidence.

■ When we review a trial judge's findings of fact, we apply the same standards for legal and factual sufficiency of the evidence as we do when we review the findings of a jury. When we review the legal sufficiency of the evidence or a "no evidence" point, we consider only the evidence and reasonable inferences that tend to support the court's findings, and we disregard all evidence and inferences to the contrary. *Responsive Terminal Sys. Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex.1989). We overrule the point and uphold the finding if

we find any evidence to support the finding. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989). When we review the factual sufficiency of the evidence or an "insufficient evidence" point, we consider, weigh and examine all of the evidence which supports or undermines the finding. *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). We set aside the court's finding only when we find that the evidence standing alone is too weak to support the finding or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

■ When we review a point that a finding is "against the great weight and preponderance of the evidence," we examine the entire record. We set aside the finding only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Hickey v. Couchman,* 797 S.W.2d 103, 110 (Tex.App.—Corpus Christi 1990).

The record contains substantial evidence that McNair used personal funds to make improvements to the property. McNair testified that, beginning in 1986, he and appellants began improving the property. In the Spring of 1987, the parties started talking about retiring and McNair moving out to Bee County. As of August 1987, McNair had advanced approximately $22,000 to make improvements to the property. The $22,000 was placed in a joint account at Gibraltar Savings. The bank loan proceeds, marked for construction expenses, were deposited in intervals in a joint account at NBC Bank, of which $5,300 (the final disbursement) was taken by McNair as reimbursement and placed in his personal account. All three parties were authorized to sign on the NBC Bank account. McNair paid the interest payments totalling $9,238.98

Without objection, McNair introduced substantial evidence at trial, including receipts, checks, and bank statements. The record includes the following evidence: 1) 32 cancelled checks, dated as early as April 1985, from McNair's personal account and paid to Kosub, totalling $22,804.46; 2) 16 cancelled checks, dated between May 26, 1986 and September 6, 1988, from McNair's personal account to Thomas, totalling $10,897.37; 3) numerous cancelled checks dated from January 1987 to August 1988, which evidence payment for construction materials and services; 4) numerous cancelled checks and receipts evidencing payment for construction costs of the aviary, the purchase of birds, bird feed, and miscellaneous expenses; 5) cancelled checks showing payment for utilities from July 1987 to October 1988; and 6) the Gibraltar account statement, reflecting activity from August 10, 1987 to September 9, 1987, and twenty-four cancelled checks drawn on the account totalling $17,591.10, to pay for improvements to the property. McNair testified that he spent $68,989.41 towards constructing the new larger house, $15,258.65 in constructing the aviary, $6,446.86 in bird stock and $3,985.41 in bird seed and miscellaneous costs. The Bee County Appraisal District records reflect an increased value of $81,570 from August 1987 to July 1991.

Appellants contend that McNair's actual contribution amounts to $35,741 from his personal funds, and that $16,300 came from the loan proceeds, totalling only $51,041.20. Appellants argue that, assuming the truth of McNair's assertion that he spent $69,000 of his personal funds and $18,000 worth of labor [6], McNair's total contribution towards the new house amounts to $87,000. This figure is 72.5% of $120,000. Appellants contend that, as owner of one-third interest in the property, McNair is entitled to only one third of the value of the property before improvements were made, plus his share of the enhanced value. However, because McNair promised to make the improvements at his own expense as consideration for his one third interest, McNair is entitled to only his respective share of the enhanced value of the property. Appellants argue that, since they valued the property before it was improved at $35,000 and the judgment directs the

---

6. McNair testified that if the value of Thomas' services towards construction of the new house equalled $18,000, then he also contributed $18,000 in services.

property be sold at no less than $100,000, the enhanced value of the property is $65,000. Appellants argue in their brief that:

> (a)ppellee's 60% of the $65,000 enhancement value is only 39% ($39,000) of the $100,000 net proceeds, not 60%. The difference between 60% and 39% of $100,000 (that is, 21% of $100,000) is $21,000. There is no evidence, or insufficient evidence, to allow the court to deprive Appellants of at least $21,000. Alternatively, the judgment in this respect is contrary to the great weight and preponderance of the evidence.

Evidently, based on some misguided calculations, appellants contend that the judgment is "manifestly and grossly unfair to appellants" even if we were to make certain assumptions in favor of McNair. We are unpersuaded by appellants' arguments. Appellants make contentions which are unsupported by evidence in the record. Thomas testified that he spent approximately $27,000 towards improving the property after it was purchased in 1983. Thomas also testified that he contributed, in his opinion, $18,000 worth of services in constructing the larger house, for a total of $45,000. Appellants make no contention that they incurred any other expense towards improvements on the property after 1987.[7] Appellants have failed to establish that the evidence supporting the sixty percent award to McNair is too weak or contrary to the overwhelming weight of the evidence.

We hold that there is sufficient evidence to support the court's ruling that McNair receive sixty percent of the net proceeds up to $120,000 from the sale of the property, and that the award is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

 Kosub testified that he had spent approximately $25,000 of his own personal funds to make improvements to the property from 1983 to 1991. Kosub also testified that, after McNair became a co-tenant, he contributed approximately $15,000 to improve the property and that these funds came from 1) his salary as a substitute teacher in the Corpus Christi Independent School District from 1984 to about 1986, 2) playing musical shows with two to three bands, and 3) selling records. Although Kosub testified as to his income between the years 1987 and 1990, the record does not contain his income tax records or, more importantly, any evidence to reflect actual expenditures made toward construction of the house or other improvements on the property beginning in 1987. Thomas testified that Kosub purchased the water well for $600 and "found" the bathtub installed in the small house. However, this expense, included in Thomas' estimate of $27,000 toward improvements made to the property, was made before McNair's arrival as a co-tenant. Thomas also testified that Kosub contributed $19,000 from his savings account to pay off the extended note to prevent foreclosure. We find no other evidence that Kosub contributed any other funds to improve the property after 1987 or that he is otherwise entitled to more than that which he was awarded.

Accordingly, we hold that the trial court's order awarding Kosub one-third of the net proceeds in excess of $120,000 is supported by the evidence, and that it is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Appellants' third point of error is overruled.

 By their fourth point of error, appellants contend that the trial court erred by denying appellants recovery for McNair's conversion of their personal property. Appellants contend 1) that there is sufficient evidence to support a finding of conversion, and 2) that neither the judgment nor the trial court's findings of fact and conclusions of law mention appellants' conversion claim.

 Under Texas law, "conversion" is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights. *Virgil T. Walker Const. Co., Inc. v. Flores,* 710 S.W.2d 159,

---

7. We assume that the trial court, by ordering that Thomas receive forty percent of the net proceeds up to $120,000, attempted to reimburse Thomas for his estimated contribution in the property. (37.5% of $120,000 = $45,000).

160 (Tex.App.—Corpus Christi 1986, no writ). It is not essential that the complainant establish a wrongful intention on the part of the wrongdoer. *Id.*

Thomas testified that numerous items were taken by McNair when he returned to the property to claim his personal belongings. Thomas also testified that McNair returned certain items to the sheriff's department but that he took a refrigerator, an antique marble top fern stand, a wooden lamp table, a glass top and mirrored stand, five carved glass pieces, two vases, a fountain and an unused weed eater. On redirect, Thomas testified that the fair market value of these items totalled $2,533.00. He also testified that he spoke to McNair's daughter and demanded that McNair return the items. McNair later told him he would never give the items back. After Thomas turned the matter over to the Sheriff's department, McNair returned a few items, including a rug. Thomas was advised to file a civil suit for the return of any remaining items. The evidence includes photographs which depict the missing items.

Appellants' fourth point of error does not sufficiently raise a challenge to the trial court's findings of fact and conclusions of law. We, therefore, need not address appellants' contention that the judgment may not be supported by the court's findings of fact.

■ The trial court, as the trier of fact, has the duty to weigh the evidence and judge the credibility of a witness. *Alkas v. United Sav. Ass'n of Texas, Inc.*, 672 S.W.2d 852, 856 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Even when the evidence is uncontradicted, the trial court may disbelieve the witness's testimony. *Gulf State Pipe Line Co. v. Orange County Water Control & Improvement Dist. No. 1*, 526 S.W.2d 724, 727 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.). After reviewing the evidence, we cannot conclude that appellants have established a claim for conversion as a matter of law. Appellants' fourth point of error is overruled.

■ By their fifth point of error, appellants contend that the trial court erred by denying any recovery for their losses and injuries resulting from appellee's filing of the allegedly fraudulent bankruptcy case. Appellants' claim for relief, as alleged in their First Amended Counterclaim, is based on a theory of contract and, alternatively, brought under Rule 13 of the Texas Rules of Civil Procedure. Appellants alleged that appellee's fictitious and groundless bankruptcy petition was filed as an experiment to get an opinion of the bankruptcy court and for the purpose of preventing foreclosure.

Appellants failed to provide argument or authorities sufficient to maintain their point based on a possible breach of contract claim. *See* TEX.R.APP.P. 74(f). We, therefore, decline to address this issue.

■ TEX.R.CIV.P. 13 provides:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who shall bring a fictitious suit as an experiment to get an opinion of the court, or who shall file any fictitious pleading in a cause for such a purpose, or shall make statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt. If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanctions available under Rule 215-2b, upon the person who signed it, a represented party, or both.

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. A general denial does not constitute a violation of this rule. The

amount requested for damages does not constitute a violation of this rule.

■ Although there is no definitive statement in Texas case law determining the appropriate standard to apply in reviewing claims for relief under Rule 13, we have in the past adopted the "abuse of discretion" standard applied by federal courts to review violations of FED.R.CIV.P. 11. *See, e.g., Rodriguez v. State Dept. of Highways and Public Transp.*, 818 S.W.2d 503, 504–505 (Tex. App.—Corpus Christi 1991); *Home Owners Funding Corp. of America v. Scheppler*, 815 S.W.2d 884, 888–889 (Tex.App.—Corpus Christi 1991, no writ). The test is whether the trial court acted without reference to guiding rules or principles, or whether the action was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). A trial court's ruling should be overturned only when it is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990); *Scheppler*, 815 S.W.2d at 889.

The trial court found that McNair, upon advice of counsel, filed bankruptcy to stop foreclosure and filed suit to partition the property. The trial court did not find that appellee's pleadings were groundless or brought in bad faith or to harass. Appellants failed to prove that they were entitled to actual and exemplary damages, attorney's fees, or other relief under Rule 13. Based on our review of the record, including the facts and circumstances existing at the time of the bankruptcy filing, we cannot say that the trial court abused its discretion by denying appellants' claim for Rule 13 relief.

Appellants' fifth point of error is overruled.

■ By their seventh point of error, appellants contend that the judgment fails to indicate clearly whether the court intends the requirements of TEX.R.CIV.P. 770 to be adhered to.

Rule 770 provides:

Should the court be of the opinion that a fair and equitable division of the real estate, or any part thereof, cannot be made, it shall order a sale of so much as is incapable of partition, which sale shall be for cash, or upon such other terms as the court may direct, and shall be made as under execution or by private or public sale through a receiver, if the court so order, and the proceeds thereof shall be returned into court and be partitioned among the persons entitled thereto, according to their respective interests.

Appellants cite no authority to support their proposition that the decree ordering partition by sale must specify that the provisions of TEX.R.CIV.P. 770 govern the sale of the property. The discretion of the court to direct the terms of the sale, including the appointment of a receiver, is clear from the language of the rules regulating the partition of real estate. TEX.R.CIV.P. 756–771. In addition, appellants have failed to show any harmful error. Appellants' seventh point of error is overruled.

By a single cross-point, appellee contends that the trial court erred by not awarding him his pro-rata share of the rental value of the property for the period during which he was ousted by appellants. Appellee raises this contention for the first time on appeal. Appellee did not pray for such relief in his petition and fails to show that he is entitled to such relief. We, therefore, find that the trial court did not err. Accordingly, appellee's single cross-point is overruled.

The judgment of the trial court is AFFIRMED.