Opinion issued July 16, 2009











 






In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00904-CV






NANCY D. TWYMAN, appellant


v.


WILLIAM EARL TWYMAN, appellee






On Appeal from Probate Court No. 1

Harris County, Texas

Trial Court Cause No. 382,408






MEMORANDUM OPINION


 Appellant, Nancy D. Twyman ("Nancy"), brings this interlocutory appeal
challenging the trial court's order entering a temporary injunction enjoining her from
disbursing funds from the Edna H. Twyman Trust ("the Trust"). William Earl
Twyman ("William"), acting as agent under a power of attorney for Edna H. Twyman
("Edna"), filed an application for a temporary restraining order, a temporary
injunction, and removal of Nancy as trustee and sought declaratory judgment and
damages. In one issue, Nancy argues that the trial court erroneously issued a
temporary injunction.

 We affirm.

Background

 On September 13, 1999, Edna executed a trust that named herself as the
primary beneficiary. Edna's trust named her daughters, Nancy and Kathy Twyman
Compton, as trustees. William, Edna's son, is neither a trustee nor a beneficiary of
the Trust.

 Merrill Lynch at one time held a significant portion of the assets of the Trust. 

Account documents dated between May 2005 and February 2006 show that multiple
checks were written from the Trust to Nancy that total $99,100. Additional checks
were also written to Danny Twyman for $15,000, to Henry Twyman, (1) for $15,000, to
cash for $6,000, and to the Etowah Water and Sewer Authority and other businesses
involved in constructing Nancy's home in Georgia for over $18,000.

 On February 23, 2006, Edna executed a durable power of attorney appointing
William to act as her agent. On February 27, 2006, William and Edna's attorney sent
Nancy a letter making a "formal demand for a full accounting . . . of every action that
[she had] taken as Trustee." The letter also demanded that Nancy "pay back with
interest every cent that [she had] taken from the trust in flagrant breach of [her]
fiduciary duties as Trustee." The letter also stated:

If you have a promissory note documenting the terms of your loan from
the trust, including the use of your home as collateral to secure the loan,
then please provide it to us. Otherwise we see no way that your use of
trust funds under the terms of the Trust is anything but conversion.


 On March 16, 2006, Nancy executed a promissory note payable to Kathy
Twyman Compton, as a Trustee of the Trust, for $153,419 payable on or before May
31, 2007. (2) The note provided for an interest rate of 5% per annum, and stated that the
note "shall be effective for the purposes of interest calculation as of May 31, 2005." 
It provided for an interest rate of 12% on "outstanding principal" if not paid when
due. The note is not supported by any collateral. Although the note contained a
signature block for Edna, she did not sign it.

 Nancy also took Edna to an attorney, David Munson, and Edna retained
Munson for the purpose of having herself declared incompetent. On July 3, 2007,
Munson filed an application for appointment of a permanent guardian for Edna's
estate. The application stated that "the nature of [Edna's] incapacity is dementia, and
the degree of her incapacity is partial" and that no one held a power of attorney
signed by Edna. The application requested specific protection over Edna's financial
affairs. William subsequently contacted Munson and informed him of the prior
power of attorney executed by Edna naming William as her agent.

 On May 30, 2008, a year after the promissory note was due to be paid in full,
Nancy had Edna extend the promissory note for another year at the same terms as the
original agreement. William testified that Nancy dictated the wording of the
extension to Edna and Edna wrote what Nancy told her to write.

 On August 18, 2008, William filed an "Application for Temporary Restraining
Order, Temporary Injunction, For Removal of Trustee, Declaratory Judgment and
Lawsuit for Damages." William filed the pleading as agent under power of attorney
for Edna and sought to remove Nancy as trustee. William brought the suit pursuant
to section 37.005 of the Texas Civil Practice and Remedies Code (3) to determine
whether there had been theft and conversion of the Trust's assets by Nancy and the
elder abuse inflicted on Edna by Nancy. The pleadings assert that Nancy "illegally"
acted as trustee, "converted hundreds of thousands of dollars from the Trust for her
own use," and "built herself a home, paid contractors/suppliers to do work in her
home, all using [Edna's] Trust funds." William further alleged that Nancy "has
threatened, begged, and intimidated [Edna] into signing legal documents to make her
actions appear justified and as though the theft was a legitimate loan, under a pretense
of being done with [Edna's] knowledge and consent." The petition also alleged that
Nancy engaged David Munson to have Edna declared incompetent and that, after
Munson "learned of the bad acts of Nancy Twyman," he "transferred" the case to
another lawyer. (4)

 In his accompanying affidavit, William asserted:

I have personally observed my mother, Edna H. Twyman, succumb to
undue worry, stress and pressure inflicted upon her by Nancy Twyman,
regarding my mother's finances. . . . Unless Nancy Twyman is prevented
by this Court from further withdrawing, disbursing, committing,
encumbering, diminishing, or disposing of the [Trust's] funds[,] Edna
H. Twyman will have no guarantee of recovering any of the funds and
assets in her Trust accounts. Further, my mother will soon be penniless
if Nancy Twyman maintains control, as Nancy Twyman has no means
which to repay my mother what she has stolen.


 On August 20, 2008, the trial court signed a temporary restraining order
commanding Nancy to refrain from disposing of Trust funds until the hearing on the
application for a temporary injunction could be had before the trial court. (5)

 The trial court held a hearing on William's request for a temporary injunction
on September 8, 2008. Nancy did not personally attend this hearing. William
testified that Edna lived on his property in Montgomery, Texas in a trailer that
William had purchased for her as a partial repayment of a debt William owed to Edna. 
He testified that he became aware that Nancy was withdrawing funds from the Trust
to pay for her own expenses and expenses related to her home in Georgia at the end
of 2005, that there is no such person as Henry or Danny Twyman, and that he
believed that those names occurred in Merrill Lynch's records due to a typographical
or scanning error. William explained that Edna began to have difficulty with her
financial record keeping due to poor eyesight and asked him to take over those
responsibilities and that Edna executed the power of attorney to enable him to help
her with that and other tasks. William testified that he became concerned when
Nancy took Edna to the attorney to have Edna declared incompetent and that he
became even more concerned when Nancy subsequently had Edna extend the terms
of the past-due promissory note. His conversations with Nancy led him to believe
that she did not have the means to repay the promissory note because she was having
financial difficulties and had contemplated filing for bankruptcy and that she would
continue to use Trust funds to pay her own expenses. William also testified that
Nancy had the account with Merrill Lynch closed and transferred to another account
in Pennsylvania, where Kathy Compton, the other original co-trustee, lives. He
testified that Nancy had made no repayments to the Trust at the time of the hearing.

 Nancy's counsel questioned William regarding a gift of $21,000 made by Edna
to him in 2007, after he began serving as Edna's agent under the power of attorney. 
William testified that the money was given to him at Edna's insistence because she
wanted to help him repay some outstanding student loans. William testified that he
was not involved in writing the check to himself or transferring the money to himself
in any way. Nancy's trial counsel also questioned William about a loan of over
$50,000 Edna made to William prior to the creation of the Trust. William testified
that he had repaid that loan to Edna by paying for Edna's mobile home, electricity,
and various other expenses until he and Edna had calculated that he had repaid the
amount Edna had loaned him.

 On October 7, 2008, the trial court signed an order granting a temporary
injunction and appointing a receiver for the Trust. The order stated that unless Nancy
was "immediately restrained," she " may continue to deplete the funds" in the Trust
and that Edna "will suffer irreparable injury because of the permanent loss of funds
which belong to [her] Trust." The order also stated that Edna had no adequate
remedy at law because Nancy had spent "all the funds" and Edna "may never recover
her loss." The trial court ordered that Nancy be enjoined "from spending any of the
funds of the Edna Twyman Trust . . . except for health, support, and maintenance for
[Edna]." The trial court also appointed attorney Louis Ditta, a neutral party, as
receiver of the Trust's funds upon posting a bond and taking an oath.

Temporary Injunction

 In her sole issue, Nancy argues that the trial court erred in granting a temporary
injunction. Specifically, Nancy argues that the trial court did not adhere to the
standard of proof because nothing in the record supported a finding of probable injury
and there was no proof of imminent harm or irreparable injury. She also argues that
William failed to prove that an adequate remedy at law did not exist and that William
should have been denied his requested relief because he has unclean hands.

A. Standard of Review and Burden of Proof

 Whether to grant a temporary injunction lies within the sound discretion of the
trial court. Ahmed v. Shimi Ventures, L.P., 99 S.W.3d 682, 692 (Tex. App.--Houston
[1st Dist.] 2003, no pet.). We will not reverse an order granting a temporary
injunction unless the trial court's action was "so arbitrary that it exceeded the bounds
of reasonable discretion." Id. (quoting Tel. Equip. Network, Inc. v. TA/Westchase
Place, Ltd., 80 S.W.3d 601, 607 (Tex. App.--Houston [1st Dist.] 2002, no pet.)). We
view the evidence in the light most favorable to the trial court's order, indulging
every reasonable inference in its favor. Id. A temporary injunction's purpose is to
preserve the status quo of the litigation's subject matter pending trial. Id. (citing
Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002)). We may not review
the merits of the applicant's case in an interlocutory appeal from a temporary
injunction order. Id.

 To obtain the temporary injunction, William, as the applicant, was required to
plead and prove (1) a cause of action against Nancy, (2) a probable right to the relief
sought, and (3) a probable, imminent, and irreparable injury in the interim. See id.
(citing Butnaru, 84 S.W.3d at 204). Nancy does not argue on appeal that William
failed to plead a cause of action against her or that he failed to establish a probable
right to the relief sought. Therefore, we turn to the third requirement to obtain a
temporary injunction--William was required to prove a probable, imminent, and
irreparable injury to the Trust. See id.

B. Probable, Imminent, and Irreparable Injury

 Nancy argues that William failed to prove that the Trust would suffer a
probable, imminent, and irreparable injury and, particularly, that William failed to
prove that there was no adequate remedy at law for the Trust's damages.

 To establish an irreparable injury, the injured applicant must show that there
is no adequate remedy at law for its damages--in other words, that it "cannot be
adequately compensated in damages or . . . the damages cannot be measured by any
certain pecuniary standard." Ahmed, 99 S.W.3d at 692 (quoting Butnaru, 84 S.W.3d
at 204). "An adequate remedy at law is one that is as complete, practical, and
efficient to the ends of justice and its prompt administration as is equitable relief." 
Id.

 Through his pleadings, affidavit, supporting documents, and hearing testimony,
William established that over $150,000 had been removed from the Trust by Nancy
for her own personal use. Upon receiving a request for an accounting from William,
acting as Edna's agent, Nancy later executed a promissory note. Nancy instigated
proceedings to have Edna declared incapacitated for the purpose of dealing with her
financial matters, failed to repay under the terms of the promissory note, and then
subsequently pressured Edna to extend the term of the promissory note. William also
established that, although her name still appears on documents and accounts for the
Trust, Kathy Compton, the co-trustee, had resigned, leaving Nancy as the sole trustee. 
William testified that Nancy told him she could not pay back the money that she had
borrowed from the Trust and that she would withdraw more money from the Trust to
pay her own expenses if needed in the future.

 Nancy argues that the Trust was not injured because it holds the promissory
note executed by her and that William failed to show that the Trust had no adequate
remedy at law because it could collect on the promissory note according to its terms. 
However, William testified that Nancy had admitted to him that she was having
financial difficulties and that she had considered filing for bankruptcy. Although
Nancy argues that William's allegation that she may file for bankruptcy is not enough
to establish an irreparable injury, the evidence supporting her lack of ability or desire
to repay the Trust under the terms of the promissory note goes beyond William's
testimony regarding Nancy's financial difficulties.

 The evidence presented in the trial court demonstrates that the circumstances
surrounding the creation of the promissory note, including its lack of collateral, and
its subsequent extension, raise a question regarding Nancy's intention and ability to
repay the funds and her potential mismanagement as trustee for the Trust. Nancy's
past behavior of withdrawing money for personal use and executing a promissory
note after William's lawyer demanded an accounting, combined with her subsequent
failure to repay any of the funds withdrawn and her efforts to extend the terms of the
note, demonstrates that allowing her continued access to the Trust funds could lead
to more withdrawals that would not be repaid. Even if the promissory note could be
collected upon, it would not protect the Trust from loss for additional amounts Nancy
would be able to withdraw if a temporary injunction were not granted. See Butnaru,
84 S.W.3d at 204 (holding that purpose of temporary injunction is to preserve status
quo of litigation's subject matter pending trial).

 Nancy also argues that William failed to demonstrate imminent harm because
he waited to file the lawsuit until more than two years after he became aware of many
of the transactions at issue in the underlying suit and because he "acknowledged that
the Trust account for the last year sustained no significant drop in value." However,
William did take action by having an attorney send Nancy a demand for an
accounting in February 2006. William testified that he eventually decided to file a
suit against Nancy when he became aware that Nancy had pressured Edna to extend
the term of the promissory note rather than repay it according to its terms. Likewise,
the fact that Nancy had not withdrawn any additional funds from the Trust since the
2006 demand letter was sent does not establish that she could not do so in future were
she to remain the sole trustee of the Trust during the pending litigation. William's
testimony and the documentary evidence presented at the hearing support the trial
court's implied conclusion that Nancy posed an on-going danger of loss to the Trust's
fund so long as she was acting as the sole trustee. See Ahmed, 99 S.W.3d at 692
(holding that appellate courts view evidence in light most favorable to trial court's
order and indulge every reasonable inference in its favor).

 Therefore, William established that Edna would suffer a probable, imminent,
and irreparable injury if Nancy was not enjoined from disbursing money from the
Trust. See id. We conclude that the only way to preserve the status quo and prevent
further harm to the Trust was to deny Nancy the ability to withdraw any additional
funds from the Trust while the litigation is pending. See id. There was no remedy at
law that was as complete, practical, and efficient to the ends of justice and its prompt
administration as temporarily enjoining Nancy from making withdrawals from the
Trust. See id.

C. Unclean Hands

 Nancy also argues that the trial court should not have granted the temporary
injunction requested by William because he has unclean hands. Specifically, Nancy
argues that William received $21,000 from Edna in 2007 and that he did not act
promptly in enforcing his rights. 

 Injunctive relief is an equitable remedy, and the complaining party must come
into court with clean hands and must have acted promptly to enforce its right. 
Landry's Seafood Inn & Oyster Bar-Kemah, Inc. v. Wiggins, 919 S.W.2d 924, 927
(Tex. App.--Houston [14th Dist.] 1996, no writ); Foxwood Homeowners Ass'n v.
Ricles, 673 S.W.2d 376, 379 (Tex. App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.). 
The doctrine of unclean hands will be applied only to "one whose conduct in
connection with the same matter or transaction has been unconscientious, unjust, or
marked by a want of good faith, or one who has violated the principles of equity and
righteous dealing." In re Jim Walter Homes, Inc., 207 S.W.3d 888, 899 (Tex.
App.--Houston [14th Dist.] 2006) (orig. proceeding) (quoting Thomas v. McNair,
882 S.W.2d 870, 880-81 (Tex. App.--Corpus Christi 1994, no writ.)). In addition,
the complaining party must show serious injury to himself arising from the conduct
that cannot be corrected without applying the doctrine. Id.

 Here, the trial court heard conflicting testimony about the gift and loan to
William. It resolved the issue, at this early stage of the proceedings, in favor of
William. We defer to its implied finding that William is acting in good faith. See
Ahmed, 99 S.W.3d at 692 (stating that reviewing court must indulge every reasonable
inference in favor of trial court's order).

 We conclude that the trial court did not abuse its discretion in granting the
temporary injunction. See id. (holding that appellate courts may not reverse order
granting temporary injunction unless trial court's action was "so arbitrary that it
exceeded the bounds of reasonable discretion").

 We overrule Nancy's sole issue.

Conclusion

 We affirm the order of the trial court.






 Evelyn V. Keyes

 Justice


Panel consists of Justices Keyes, Hanks, and Bland.
1. Danny Twyman and Henry Twyman do not exist. As we discuss below, William
testified that the inclusion in the account records was an error and that these funds
also went to Nancy.
2. Kathy Compton subsequently withdrew as trustee, leaving Nancy as the sole trustee
for the Trust. However, Compton's name remains on the Trust's documents and
accounts as a co-trustee.
3. See Tex. Civ. Prac. & Rem. Code Ann. § 37.005 (Vernon 2008). Section 37.005
provides, 


 A person interested as or through an executor or administrator,
including an independent executor or administrator, a trustee, guardian, other
fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust in the
administration of a trust or of the estate of a decedent, an infant, mentally
incapacitated person, or insolvent may have a declaration of rights or legal
relations in respect to the trust or estate:


 (1) to ascertain any class of creditors, devisees, legatees, heirs, next
of kin, or others;


 (2) to direct the executors, administrators, or trustees to do or
abstain from doing any particular act in their fiduciary capacity;


 (3) to determine any question arising in the administration of the
trust or estate, including questions of construction of wills and
other writings; or


 (4) to determine rights or legal relations of an independent executor
or independent administrator regarding fiduciary fees and the
settling of accounts. 


Id.
4. According to William's appellate brief, the proceeding to have Edna declared
incompetent "has since been dismissed by the Judge as not having been brought with
authority."
5. Nancy filed a special appearance, which the trial court denied. This Court affirmed
the trial court's denial of the special appearance in Twyman v. Twyman, No. 01-08-00888-CV, 2009 WL 1331341 (Tex. App.--Houston [1st Dist.] May 14, 2009, no pet.
h.) (not designated for publication).