Opinion issued May
6, 2010.

 








 



 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00034-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



GRIPPING EYEWEAR, INC.,
Appellant

 

V.

 

DAN L. DIETZ and CAROLYN
DIETZ, Appellees

 

 



On Appeal from the 295th District
Court

Harris County, Texas

Trial Court Cause No.
2007-62862

 

 

 

 




MEMORANDUM OPINION

 

          In this breach of contract case, appellant,
Gripping Eyewear, Inc., appeals from the trial court’s summary judgment
rendered in favor of appellees, Dan L. Dietz and
Carolyn Dietz (collectively the “Dietzes”).  In four issues, Gripping Eyewear contends the
trial court erred by granting the Dietzes’
matter-of-law motion for summary judgment on the breach of contract claims and
by granting the Dietzes’ no-evidence motion for
summary judgment on Gripping Eyewear’s counterclaims.  We conclude the trial court properly granted summary judgment in favor
of the Dietzes on their breach of contract claim,
properly granted a take-nothing summary judgment on Gripping Eyewear’s breach
of contract counterclaim, but erred by granting the no-evidence summary
judgment on Gripping Eyewear’s remaining counterclaims.  We affirm in part, and reverse and remand in
part.

Background

          The Dietzes
invented a magnetic buckle to secure eyeglasses onto clothing and received
patents for this product and other similar products.  In December 2004, the Dietzes
entered into an Assignment, Non-Compete and Consulting Agreement (Consulting
Agreement) with Gripping Eyewear.  The Dietzes agreed, among other things, not to disclose
confidential information, as defined by the parties, and not to compete with Gripping
Eyewear in Gripping Eyewear’s “field of business,” a term also defined by the
parties.  Gripping Eyewear also agreed to
make future payments to the Dietzes.  

The
relationship between the parties included at least two prior lawsuits. In 2005,
Gripping Eyewear defaulted by failing to make required payments under the
Consulting Agreement, and the Dietzes sued to
collect.  In Cause No. 2004-74129, in the
295th District Court of Harris County, the Dietzes
and Gripping Eyewear entered into a Formal Settlement Agreement (Settlement
Agreement) in February 2007.  Under this
Settlement Agreement, Gripping Eyewear agreed to pay and did pay $275,000 on or
before February 12, 2007, $45,000 on or before February 26, 2007, and $32,500
on or before June 30, 2007.  Gripping
Eyewear, however, did not pay $35,250 that it had agreed to pay on or before
September 30, 2007. 

Gripping
Eyewear also failed to make the quarterly payments due under the Consulting
Agreement.  It did not pay the June 30,
2007 quarterly payment of $42,500, which, under the terms of the Settlement
Agreement, included the March 31, 2007 Consulting Agreement quarterly payment
that had been deferred.  Gripping Eyewear
also failed to pay Consulting Agreement quarterly payments due September 30,
2007, December 31, 2007, March 31, 2008 and June 30, 2008.  As of July 1, 2008, the total
of unpaid Consulting Agreement payments were $127,500, and the total
unpaid Settlement Agreement payments were $35,250 for a total unpaid amount of $162,750.  The Dietzes filed a
lawsuit for breach of contract for these amounts that Gripping Eyewear had not
paid. 

In
addition to its general denial to the Dietzes’ breach
of contract claim, Gripping Eyewear’s answer asserted five “defenses”: (1)
failure of consideration, (2) failure to perform conditions precedent, (3)
unclean hands based on the theory that the Dietzes
had “not given the performance for which they bargained” by failing to comply
“with all terms and obligations owed by them” under the agreement, (4)
excessive demand of attorney’s fees by the Dietzes,
and (5) failure to mitigate damages. 
Gripping Eyewear also filed nine counterclaims against the Deitzes: (1) breach of contract by asserting that the Dietzes violated their agreements by disclosing information
and seeking a patent on an item containing a magnetic clip, (2) patent
infringement, (3) breach of covenant not to compete, (4) breach of fiduciary
duty, (5) indemnity, (6) attorneys fees and costs, (7) conversion, (8) business
disparagement, and (9) punitive damages. 
It also requested injunctive relief. 


The
Dietzes filed a matter-of-law motion for summary
judgment on their claim against Gripping Eyewear for breach of contract requesting
$162,750 that the Dietzes claimed was due under the
terms of the agreements they had with Gripping Eyewear.  This motion by the Dietzes
only mentioned its own claim for breach of contract; the motion did not mention
the “defenses” asserted by Gripping Eyewear in its answer, nor
the counterclaims presented by Gripping Eyewear.  

Gripping
Eyewear responded to the Dietzes’ motion and asserted
its own matter-of-law motion for summary judgment requesting judgment in its
favor concerning the Dietzes’ claim for breach of
contract, and requesting judgment that the court find the
Dietzes liable in Gripping Eyewear’s claims for breach
of contract and breach of covenant not to compete.  This matter-of-law motion by Gripping Eyewear
also asked the court to determine that the Dietzes
had unclean hands, which was one of the “defenses” included in Gripping
Eyewear’s answer.  In the motion filed by
Gripping Eyewear, its theory underlying all of its assertions was that the Dietzes materially breached the covenant not to compete by
filing requests for patents in violation of the consulting agreement.  Other than unclean hands, no other “defense”
asserted in Gripping Eyewear’s answer was mentioned in the matter-of-law motion
for summary judgment filed by Gripping Eyewear. 
Other than breach of contract and breach of covenant not to compete, no
other counterclaim asserted by Gripping Eyewear was mentioned in the
matter-of-law motion for summary judgment filed by Gripping Eyewear.  

The
Dietzes never replied to Gripping Eyewear’s answer to
the Dietzes’ matter-of-law motion for summary
judgment.  The Dietzes
also did not file any response to Gripping Eyewear’s matter-of-law motion for
summary judgment that requested the trial court to find the Dietzes
liable for breaching the contract and covenant not to compete.  The trial court rendered partial summary
judgment in favor of the Dietzes for $162,750 for actual
damages, prejudgment interest, attorney’s fees, and court costs.           

Following
the trial court’s partial summary judgment in favor of the Dietzes
for breach of contract, the Dietzes filed a no-evidence
motion for summary judgment asserting Gripping Eyewear had no evidence to
support its counterclaims or its defenses to the Dietzes’
claim for breach of contract.  The
no-evidence motion identified each of the counterclaims and defenses by their
title but it did not specify the elements of each counterclaim and defense it
challenged.  Gripping Eyewear did not
file any response to the no-evidence motion for summary judgment filed by the Dietzes.  The trial
court granted the no-evidence motion for summary judgment.  The final judgment in this case incorporated
the prior partial summary judgment ruling in favor of the Dietzes
for $162,750 for breach of contract, granted additional attorney’s fees of
$1,650 to the Dietzes, and ordered that Gripping
Eyewear take nothing.

After
the trial court’s final summary judgment, Gripping Eyewear responded to the no-evidence
motion for summary judgment, asked for reconsideration of the matter-of-law
summary judgment ruling, and requested a new trial.  Shortly after that, Gripping Eyewear filed a motion
similar to its earlier motion for reconsideration.  After the Dietzes responded
to these motions, the trial court entered an order confirming that it was
overruling Gripping Eyewear’s motions.  

Standard of Review

          Because summary judgment is a question
of law, we review a trial court’s summary judgment decision de novo.  See
Provident Life & Accident Ins. Co. v. Knott, 128
S.W.3d 211, 215 (Tex. 2003).  The movant for a matter-of-law summary judgment has the burden
of showing that there is no genuine issue of material fact and that it is
entitled to judgment as a matter of law. 
Tex. R. Civ. P.
166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).
 Once the movant
has established a right to summary judgment, the non-movant
has the burden to respond to the motion and present to the trial court any
issues that would preclude summary judgment.  Harvest
House Publishers v. Local Church, 190 S.W.3d 204, 210 (Tex. App.—Houston
[1st Dist.] 2006, pet. denied) (citing
City of Houston v. Clear Creek Basin
Auth., 589 S.W.2d 671, 678 (Tex. 1979); also
citing Marchal v. Webb, 859 S.W.2d 408, 412 (Tex.
App.—Houston [1st Dist.] 1993, writ denied)).

          In a rule 166a(i)
no-evidence summary judgment, the movant represents
that no evidence exists as to one or more essential elements of the non-movant’s claims, upon which the non-movant
has the burden of proof at trial.  Tex. R. Civ. P. 166a(i).  The non-movant then must present evidence raising a genuine issue
of material fact on the challenged elements. 
Id.  A party who files a
no-evidence summary judgment motion pursuant to rule 166a(i) has essentially requested a pretrial directed
verdict.  Mack
Trucks, Inc. v. Tamez, 206 S.W.3d 572, 581 (Tex.
2006).   A fact issue exists if
the evidence “rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions.”  King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003) (quoting Merrell
Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997)).  If the
evidence does no more than create a mere surmise or suspicion of fact, less
than a scintilla of evidence exists, and summary judgment is proper.  Macias v. Fiesta Mart,
Inc., 988 S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.] 1999, no pet.).  A non-movant is not
required to marshal its proof to defeat a no-evidence motion for summary
judgment; it need only point out evidence that raises a fact issue on the
challenged elements.  Tex. R. Civ. P. 166a(i), 1997 cmt.

When
a party moves for both a no-evidence and a matter-of-law summary judgment, we
first review the trial court’s summary judgment under the no-evidence standard
of Rule 166a(i).  In re
Estate Allen, 301 S.W.3d 923, 926 (Tex. App.—Tyler 2009, pet. filed)
(citing Ford Motor Co. v. Ridgway,
135 S.W.3d 598, 600 (Tex. 2004)).  If the
no-evidence summary judgment was properly granted, we do not reach arguments
under the traditional motion for summary judgment.  Id.


Gripping Eyewear’s
Counterclaims

In
part of its second issue, Gripping Eyewear contends the trial court erred by
granting the Dietzes’ motion for no-evidence summary
judgment because the Dietzes failed to list the elements
of Gripping Eyewear’s counterclaims.  Also,
part of Gripping Eyewear’s third issue presents a conditional challenge
asserting that it presented evidence raising an issue of fact on the
counterclaims.  

          Texas Rules of Civil Procedure 166a(i) states that “[t]he [no-evidence] motion must state the
elements as to which there is no-evidence.” 
Tex. R. Civ. P. 166a(i).  Rule 166a(i) requires that a no-evidence summary judgment motion “be
specific in challenging the evidentiary support for an element of a claim or
defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an
opponent’s case.”  Gary E. Patterson
& Assocs., P.C. v. Holub, 264 S.W.3d 180, 200
(Tex. App.—Houston [1st Dist.] 2008, pet. denied) (quoting Tex. R. Civ. P. 166a(i), 1997 cmt.).  “Thus, all that is required under Rule 166a(i) is that the no-evidence
motion specifically challenge an element or elements of the non-movant’s theory of liability or defense; a specific attack
on the evidentiary components that might prove a certain element is
unnecessary, as long as the element itself is specifically challenged.”  Id. (citing Timothy Patton, Summary Judgment In Texas, Practice, Procedure
and Review § 5.03[2][b] (3rd ed. 2006)).

          The Dietzes’
no-evidence motion does not state any of the elements of Gripping Eyewear’s
counterclaims.  The Dietzes’
motion states,

[Gripping Eyewear] does not have
legally-sufficient evidence to support any of the elements of its . . .
counterclaims on which it has the burden of proof at trial . . . .

 

Likewise, [Gripping Eyewear] has no
evidence to support its counterclaims of breach of contract, patent
infringement, breach of covenant not to compete, breach of fiduciary duty,
indemnity and attorney’s fees, conversion, business disparagement, request for
punitive damages and request for injunctive relief.  Again, [Gripping Eyewear]
has not come forward with any evidence to support its alleged counterclaims and
failed to submit any affidavit or other sworn summary judgment evidence in
support its counterclaims and in opposition to the Traditional Motion.

 

The
Dietzes’ motion for no-evidence summary judgment was conclusory and failed to specifically challenge any element
or elements of Gripping Eyewear’s counterclaims.  We hold the trial court erred in granting the
Dietzes’ motion for no-evidence summary judgment.   See Tex.
R. Civ. P. 166a(i); Gary
E. Patterson & Assocs., 264 S.W.3d at 200.    

The
consequence of reversing the no-evidence motion for summary judgment filed by the
Dietzes against Gripping Eyewear’s counterclaims is
that we must remand those claims back to the trial court unless they were
properly resolved by another vehicle, such as a matter-of-law motion for
summary judgment.  See Bandera Elec. Co-op., Inc. v. Gilchrist,
946 S.W.2d 336, 337 (Tex. 1997) (unresolved claims should be reversed and
remanded to trial court for disposition).  The only counterclaims that were discussed in
any of the matter-of-law motions for summary judgment were Gripping Eyewear’s
counterclaims for breach of covenant not to compete and for breach of contract,
and, therefore, we address those two counterclaims separately below to
determine whether these claims were properly resolved by the matter-of-law
motion for summary judgment filed by Gripping Eyewear.  Excluding Gripping Eyewear’s counterclaims for
breach of covenant not to compete and breach of contract, we remand the
remaining counterclaims to the trial court. 


Gripping Eyewear’s
Counterclaim for
Breach of Covenant Not to Compete

Having
determined that the no-evidence summary judgment on the breach of covenant not
to compete counterclaim was erroneous, we address the matter-of-law summary
judgment filed by Gripping Eyewear on that claim.  Gripping Eyewear filed a matter-of-law motion
for summary judgment asking the trial court to find the Dietzes
liable for breach of covenant not to compete. 
The Dietzes did not file any response to that
motion for summary judgment.  

“The
burden on a movant seeking summary judgment on
traditional grounds is great.”  Michael v. Dyke, 41
S.W.3d 746, 750 (Tex. App.—Corpus Christi 2001, no pet.).  The movant must
conclusively establish that no genuine issue of material fact exists and that
the movant is, therefore, entitled to judgment as a
matter of law.  Tex. R. Civ. P. 166a(c); Sw. Elec. Power Co., 73
S.W.3d at 215.  Motions
for summary judgment must “stand or fall on their own merits.”  McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 342 (Tex. 1993).  Even in the absence of a response from the nonmovant, in order to be entitled to judgment, “[t]he movant still must establish his entitlement to a summary
judgment on the issues expressly presented to the trial court by conclusively
proving all essential elements of his cause of action or defense as a matter of
law.”  City of Houston, 589 S.W.2d at 678.

In
its motion for a matter-of-law summary judgment, Gripping Eyewear argued that
to be entitled to a summary judgment on its breach of covenant not to compete
claim, it must prove:

(1) an agreement for personal services;
(2) the covenant not to compete was part of the agreement at the time the
agreement was made; (3) the covenant’s limitations were reasonable in time,
geographic area and scope; (4) the covenant did not impose a greater restraint
than what was necessary to protect the parties [sic] interest; and (5) the
covenant was breached.

 

(Citations omitted).


          Gripping Eyewear’s motion only
addresses elements one, two, and five. 
Gripping Eyewear stated, “The Agreement, on its face, establishes prongs
1 and 2 of the elements stated above.” 
Gripping Eyewear further stated, “Exhibits A-G, which are
the actual filings by the Dietzes, demonstrate that
the covenant was actually breached.” 
Because Gripping Eyewear did not attempt to prove all the elements that would
entitle it to summary judgment on its breach of covenant not to compete claim, its
motion does not stand on its own merits. 
See McConnell,
858 S.W.2d at 342 (noting “summary judgments must stand or fall on their own
merits”).  We hold Gripping
Eyewear did not prove it was entitled to summary judgment as a matter of law on
its counterclaim for breach of covenant not to compete.  We, therefore, remand that claim to the trial
court.  Excluding Gripping Eyewear’s
claim for breach of contract, we sustain the second issue concerning the
counterclaims and do not reach the third issue.

“Defenses” Asserted by
Gripping Eyewear

In
its second issue, Gripping Eyewear contends the trial court erred by granting the
Dietzes’ motion for no-evidence summary judgment
because the Dietzes failed to list the elements of
Gripping Eyewear’s “defenses.”  Gripping
Eyewear’s third issue presents a conditional challenge asserting that it
presented evidence raising an issue of fact on the defenses.  In its fourth issue, Gripping Eyewear
contends that the trial court erred by granting the Dietzes’
matter-of-law motion for summary judgment because the Dietzes
should have been barred from relief under the doctrine of “unclean hands.”  

A.              
Unclean Hands

The
only “defense” presented by Gripping Eyewear in its summary judgment response
to the Dietzes’ matter-of-law motion for summary
judgment was its argument that the Dietzes had
“unclean hands” by breaching the contract first by filing patents.  The equitable doctrine of “unclean hands”
requires that a party seeking equity must come to court with clean hands.  In re Eagle
Global Logistics, L.P., 89 S.W.3d 761, 766 (Tex. App.—Houston [1st Dist.]
2002, orig. proceeding [mand. denied]).  As asserted by Gripping Eyewear, the “unclean
hands” doctrine is an affirmative defense on which Gripping Eyewear has the
burden of proof.  See
Adams v. First Nat’l Bank, 154 S.W.3d 859, 876 (Tex.
App.—Dallas 2005, no pet.); see also Long Distance Int’l Inc. v. Telefonos de Mexico, S.A. de C.V., 49 S.W.3d 347,
350–51 (Tex. 2001) (applying general rule that party relying on affirmative
defense must conclusively establish defense in summary judgment context).  The doctrine of unclean hands will be applied
only to “one whose conduct in connection with the same matter or transaction
has been unconscientious, unjust, or marked by a want
of good faith, or one who has violated the principles of equity and righteous
dealing.”  In re Jim Walter Homes,
Inc., 207 S.W.3d 888, 899 (Tex. App.—Houston [14th Dist.] 2006, orig.
proceeding) (quoting Thomas v. McNair, 882 S.W.2d 870, 880–81 (Tex.
App.—Corpus Christi 1994, no writ.)).  In
addition, the complaining party must show serious injury to himself arising
from the conduct that cannot be corrected without applying the doctrine.  Id. 








          In its response to the Dietzes’ matter-of-law motion for summary judgment,
Gripping Eyewear’s sole grounds for asserting that the Dietzes
had “unclean hands” is that the Dietzes filed seven
patents, beginning in April 2005, with the United States Patent and Trademark
Office.  However, as we explain more
fully below, the trial court properly found that the filing of these patents
did not breach the agreements between the Dietzes and
Gripping Eyewear.  We hold that Gripping
Eyewear produced no evidence of “unclean hands” by the Dietzes.

          We overrule the fourth issue.

          B.      The Remaining “Defenses” Pleaded by
Gripping Eyewear

The
plaintiff is not under any obligation to negate affirmative defenses.  Judge David Hittner
and Lynne Liberato, Summary Judgments in Texas, State and Federal Practice, 46 Hous. L. Rev., 1379, 1456 (2010).  The mere pleading of an affirmative defense,
without supporting proof, will not defeat an otherwise valid motion for summary
judgment.  Id. 1456–57 (citing Hammer v.
Powers, 819 S.W.2d 699, 673 (Tex. App.—Fort Worth 1991, no writ)).

Other
than “unclean hands,” Gripping Eyewear’s answer asserted four other “defenses”:
(1) failure of consideration, (2) failure to perform conditions precedent, (3)
excessive demand of attorney’s fees by the Dietzes,
and (4) failure to mitigate damages.  Here,
except for unclean hands, Gripping Eyewear’s “defenses” named in its pleadings
were not mentioned in its response to the Dietzes’
motion for summary judgment or in Gripping Eyewear’s own motion for summary
judgment concerning its claims for breach of contract.  If the Dietzes’
motion for summary judgment was valid, then the motion is not defeated because the
Dietzes failed to address the “defenses” pleaded by
Gripping Eyewear but not asserted in Gripping Eyewear’s response to the Dietzes’ motion for summary judgment or Gripping Eyewear’s
motion for summary judgment.  See Hammer,
819 S.W.2d at 673. 
As we note below, the trial court properly rendered summary judgment in
favor of the Deitzes on their claim for breach of
contract.  We overrule Gripping Eyewear’s
second and third issues concerning the remaining defenses pleaded but not
asserted by Gripping Eyewear.  See id.

We
overrule the second and third issues concerning the defenses pleaded by
Gripping Eyewear.

Breach of Contract

          In
its first issue, Gripping Eyewear asserts the trial court erred by granting the
Dietzes’ matter-of-law motion for summary judgment.  Gripping Eyewear specifically contends the
evidence establishes a genuine issue of material fact on Gripping Eyewear’s defense,
which asserts the Dietzes breached the agreement
first.  It argues that because the Dietzes breached first, Gripping Eyewear was not obligated
to pay the sums due under the agreements. 

          A.      Applicable Contract Law

          When
construing a written contract, our primary concern is to ascertain the true
intent of the parties as expressed in the instrument.  J. M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003).  We
must examine and consider the entire contract in an effort to harmonize and
give effect to all provisions so that none are rendered meaningless.  Id.  If the written instrument is so worded that
it can be given a definite or certain legal meaning, then the contract may be
construed as a matter of law.  See DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96,
100 (Tex. 1999).  

          All
contractual provisions should be considered with reference to the entire
instrument, and no single provision taken alone should be controlling.  J. M. Davidson, 128
S.W.3d at 229.  A simple lack of
clarity or disagreement between parties does not render a term ambiguous.  See Parks, 1 S.W.3d
at 100.  Rather, an ambiguity
arises only after the application of established rules of construction leaves
an agreement susceptible to more than one meaning.  Id. 
For an ambiguity to exist, both potential meanings must be
reasonable.  Id.  Whether a contract is ambiguous is a question
of law for the trial court to decide by looking at the contract as a whole in
light of the circumstances present when the contract was entered.  Plotkin v. Joekel, 304 S.W.3d 455, 470 (Tex. App.—Houston [1st
Dist.] 2009, pet. denied) (citing Coker, 650 S.W.2d at 394).

          The
essential elements of a breach of contract claim are: (1) the existence of a
valid contract; (2) performance or tendered performance by the plaintiff; (3)
breach of the contract by the defendant; and (4) damages sustained by the
plaintiff as a result of the breach.  Valero Mktg. & Supply Co. v. Kalama Int’l, 51 S.W.3d
345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

 

          B.      Analysis on Whether the Dietzes Breached First

          The
Dietzes filed Plaintiff’s Motion for Traditional
Summary Judgment on their breach of contract claim against Gripping Eyewear.  The Dietzes’ Motion
for Summary Judgment is based solely on the theory that Gripping Eyewear
materially breached the Consulting Agreement and Settlement Agreement by
“failing to make the quarterly payments due and owing . . . under the
Consulting Agreement for March, June, September and December 2007 and March and
June 2008 . . . [and b]y failing to make the $35,250
payment due under the Settlement agreement.” 


          Gripping
Eyewear filed Defendant’s Summary Judgment Response and Cross-Motion for
Partial Summary Judgment as to Liability. 
Gripping Eyewear argued that “[the Dietzes are]
not entitled to a summary judgment on their claims as they . . . are
in breach of the agreements between the parties” because the Dietzes filed “the first of seven patents with the . . . [United
States Patent and Trademark Office] . . . which contain a magnetic device used
to secure an item to a person’s clothing.” 
Gripping Eyewear further argued that “(1) the Dietz[es] materially breached the contact; [and] (2) this breach
was material and relieved [Gripping Eyewear] from the obligation of making the
quarterly payments provided for in the Agreement.”  

          The parties both agree to the
existence and content of the Consulting Agreement and Settlement Agreement, and
both parties agree that Gripping Eyewear ceased making payments to the Dietzes under the Agreements in September 2005.  However, the parties disagree as to whether the
Dietzes breached the Consulting Agreement beginning
in April 2005 with the filing of the first of seven patents with the United
States Patent and Trademark Office, which contain “a magnetic device used to
secure an item to a person’s clothing.”  Because
the parties agree to the existence of a valid contract and damages sustained by
the Dietzes as a result of Gripping Eyewear’s failure
to make payments under the Agreements, we will not address those elements of the
Dietzes’ breach of contract claim.  See Valero Mktg. & Supply Co., 51 S.W.3d at 351.

          To succeed in their breach of contact
claim, the Dietzes must prove that they performed or
tendered performance under the Agreements. 
Id.  We must first examine
the entire contract to determine the Dietzes’
required performance under the Agreements, in an effort to give effect to all
provisions.  J. M. Davidson, 128 S.W.3d at 229.    

          The
Consulting Agreement entered into by the parties on December 13, 2004 states,
in pertinent part, 

X.      No
Competitive Ownership or Competition – DIETZ[ES] shall not, directly or
indirectly, participate in the ownership, management, operation, financing or
control of, or be employed by or otherwise render services to, any person,
corporation, firm, or other entity in the Company’s Field of Business in the
Territory . . . .  The obligations of
this Section IX shall expire ten (10) years from the Effective Date.

 

The Consulting Agreement defines the
“Company’s Field of Business” as “the manufacturing, distribution, sale and
marketing of all items specifically connected with or related to eyewear,
including, but not limited to, eye glasses, attachments for eyewear, containers
for eyewear, visor clips, eyewear accessories, magnetic eyewear applications
and eyewear frames.”  The Consulting
Agreement contains a clear promise by the Dietzes
that they would not compete or participate in competition against Gripping
Eyewear in the Company’s Field of Business, which is defined as that related to
all items “specifically connected with or related to eyewear.”  The Consulting Agreement does not provide any
restrictions on the Dietzes’ invention, production,
or other business activities unrelated to eyewear.

          Gripping
Eyewear argues that the Dietzes breached the
Consulting Agreement in April 2005 with the filing of the “first of seven
patents” with the United States Patent and Trademark Office.  In Gripping Eyewear’s Defendant’s Summary
Judgment Response and Cross-Motion for Partial Summary Judgment, Gripping Eyewear
states,

In April 2005, Dietz filed the first of seven (7)
patents with the United States Patent and Trademark Office (“USPTO”), attached
hereto as Exhibit B, which contains a magnetic device used to secure an item to
a person’s clothing.  Dietz has continued
to file items similarly described since his first breach in April 2005.  See Exhibits C-H.

 

(Emphasis omitted).  

          Exhibit
B is a publication of a patent application filed April 13, 2005.  The publication describes a “writing
instrument with magnetic clip.”  Exhibit
C is a publication of a patent application filed April 20, 2005, and describes a “attachable magnetic clip and system.”  The abstract of the publication describes the
device as a device that “attaches to the clothing of a person and uses magnetic
fields to secure the clip to the person’s clothing and [to] secure instruments
to the magnetic clip.”  The publication
describes “instruments” as “portable instruments such as writing pens and
miniature flashlights . . . .”  

          Exhibit
D, E, F, G, and H are additional patent application publications.  Exhibit D shows a “utility clip for
utilitarian tools” and describes the device as a “utility holder” for magnetic
tools, writing instruments, and flashlights.  Exhibit E shows an “illuminated writing
instrument.”  Exhibit F shows
“illuminated writing instruments with magnetic retainer clip.”  Exhibit G shows a “magnetic instrument
holder” further described as a “magnetic pocket pouch” with an accompanying
illustration that shows a magnetic pocket pouch with four slots for four
writing instruments.  Exhibit H shows a
“magnetic spring clip and system” that is designed to attach “to a writing
instrument, lighting instrument, or any other similar device.”

          Each
of the listed patents relate to non-eyewear items such as writing instruments,
miniature flashlights, and small tools, or other similarly sized objects.  The record, therefore, conclusively
establishes that the Dietzes’ patents that Gripping
Eyewear identifies as breaches of the Consulting Agreement are not
“specifically connected with or related to eyewear.”  Because the patent applications fail to show
that any of the patents relate to eyewear, the patent applications do not
constitute breaches of the Consulting Agreement.  The record shows no genuine issue of
material fact as to the Dietzes’ performance of the
contract.  See Valero Mktg. &
Supply Co., 51 S.W.3d at 351.  

          To succeed in their breach of
contract claim, the Dietzes must also prove that Gripping
Eyewear breached the Consulting Agreement and Settlement Agreement.  Id.  We must first examine the entire contract
to determine Gripping Eyewear’s required performance under the Agreements, in
an effort to give effect to all provisions. 
See J. M. Davidson, 128 S.W.3d at 229.  

          The Settlement Agreement requires
Gripping Eyewear to pay a total of $387,750.00 to the Dietzes
before September 30, 2007 and to continue the payment of quarterly payments as
required under the Consulting Agreement, through March 2015.  The Settlement Agreement states,

          1.       Settlement
Payments. GEI shall pay to the Dietz[es] the sum of $387,750.00 as follows:

                   a.       $275,000.00 on
or before February 12, 2007 . . . 

                   b.       $45,000.00 on
or before February 26, 2007;

                   c.       $32,500.00 on
or before June 30, 2007; and

                   d.       $35,250.00 on
or before September 30, 2007 . . . 

 

          2.       Items Satisfied by Settlement Payments.
The Settlement Payments specified in paragraph 1 above shall satisfy the
following items that were outstanding on the Effective Date:

                             a.       The September and December 2005 and the
March, June, September and December 2006 quarterly payments under the
Consulting Agreement . . .;

                             b.       Any and all amounts to be determined by
the arbitration . . .; and

                             c.       The January 31, 2007 annual payment due
under the Promissory Note . . .     

 

          3.       Consulting Agreement Modifications.
The March 2007 quarterly payment under the Consulting Agreement shall be
deferred one calendar quarter and shall be paid concurrently with the June 2007
quarterly payment under the Consulting Agreement.  The due date for all quarterly payments
accruing under the Consulting Agreement after March 2007 shall be the last day
of the calendar month in which the quarterly payment is due (namely, June 30,
September 30, December 31 and March 31 as applicable).

 

The Consulting Agreement referenced
by the Settlement Agreement states, “In consideration of this Agreement and the
covenants contained herein, GRIPPING EYEWEAR, beginning on March 31, 2005, will
pay to [the] DIETZ[ES] a quarterly amount of Twenty-one
Thousand Two Hundred Fifty Dollars ($21,250.00) for a period of ten
years.”  Both parties agree that Gripping
Eyewear ceased making payments to the Dietzes as was required
by the Consulting Agreement for a total of $127,500, and both parties agree
that Gripping Eyewear did not pay $35,250 of the Settlement Agreement.  

          We
hold the evidence conclusively shows (1) the existence of valid contracts, the
Consulting Agreement and the Settlement Agreement; (2) performance by the Dietzes; (3) breach of the contract by Gripping Eyewear
which failed to pay the amounts due under the agreements; and (4) damages
sustained by the Dietzes as a result of the breach.  The Dietzes have
proven the elements of their breach of contract claim.  See Valero Mktg. & Supply Co., 51 S.W.3d at 351.  The evidence also conclusively shows that the
Dietzes did not breach the agreement first because
none of the patents they filed relate to eyewear.

          Gripping
Eyewear filed a matter-of-law cross-motion for partial summary judgment on its
claim for breach of contract, asking the trial court to find the Dietzes liable. 
Gripping Eyewear sought damages that included repayment of the $21,500
it paid the Dietzes for the second quarterly payment
made in 2005, attorney’s fees, court costs, damages for patents filed by the Dietzes, and a declaration that Gripping Eyewear’s
obligations to make payments pursuant to the consulting agreement in the future
are extinguished.  Because it presents the
same arguments for its own breach of contract claims as it does defending
against the Dietzes’ breach of contract claim, we hold
that the trial court properly ordered a take nothing judgment in Gripping
Eyewear’s breach of contract claim against the Dietzes.

We
overrule the first issue and the second and third issues concerning Gripping
Eyewear’s counterclaim for breach of contract. 




Conclusion

          We reverse
the judgment of the trial court and remand all the counterclaims except breach
of contract for further proceedings.

 

                                                                   

 

                                                                   Elsa
Alcala

                                                                   Justice

 

Panel consists of
Chief Justice Radack, and Justices Alcala and Higley.