NUMBER 13-09-00355-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI –
EDINBURG 


                                                                                                                     


 

O.F. JONES III,                                                                          
Appellant,

 

v.

 

RICHARD WHATLEY,                                                              Appellee.

                                                                                                                     
  

 

On appeal from the 267th
District Court 

of Calhoun County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Justices
Rodriguez, Benavides, and Vela 

Memorandum Opinion by
Justice Rodriguez

 

This appeal involves a dispute over
legal fees between attorney, appellant O. F. Jones III, and his client,
appellee Richard Whatley.  Following a bench trial, the court entered judgment
against Jones and filed findings of fact and conclusions of law.  The trial
court also awarded Whatley his attorney's fees on his counterclaims and his
expert attorney witness's fees.  By multiple, unnumbered issues and sub-issues,
which we organize and number as three, Jones challenges the trial court's
judgment and its findings of fact and conclusions of law.  We reverse and
remand, in part, and reverse and render, in part.

I.  Background[1]

Jones provided legal representation to
Whatley in a suit against Lindeman, Inc. (the Lindeman case), tried in
the 38th Judicial District Court of Medina County, Texas.  See Whatley v.
Lindeman, Inc., No. 04-04-00351-CV, 2005 Tex. App. LEXIS 1078, at *1, 7-16
(Tex. App.—San Antonio Feb. 9, 2005, pet. denied) (mem. op.).  Following a
trial on the merits, the jury awarded Whatley $93,334 to "fairly and
reasonably compensate" him for damages that resulted from the loss of his
plane when the hangar in which it was being repainted burned.[2] 
Id. at *14.  The jury also awarded $18,600 as "a reasonable fee for
the necessary [legal] services" Jones "rendered in preparation [of]
and [for the] trial of this case . . . ."  Id.  The
jury awarded no appellate fees.  See id. at *14-15.

Considering this an adverse judgment
because of the amount of damages and the amount of attorney's fees awarded,
appeal was taken to the Fourth Court of Appeals challenging the sufficiency of
the evidence to support both awards.[3]
 See id. at *1, 7-16.  In its opinion delivered on February 9, 2005, the
San Antonio Court held, in relevant part, that the evidence was sufficient to
support the jury's finding that the value of the plane was $93,334.00.  Id.
at *11-12, 14.  As to the attorney's fees, the appellate court concluded that
the "amount of attorney's fees awarded [$18,600] was within the range of
the testimony and supported by sufficient evidence."[4] 
Id. at *16.  The court of appeals also concluded that "the trial
court did not abuse its discretion in finding that the amount of the settlement
credit was $106,000.00."[5] 
Id. at *11-12.  Accordingly, it overruled Whatley's issues and affirmed the trial
court's judgment.  Id. at *12-17.

On June 16, 2006, Jones sued Whatley for
breach of contract or, in the alternative, for payment pursuant to the
equitable doctrine of quantum meruit.  In his petition, Jones claimed that
Whatley defaulted in the payment of his account for legal services Jones
rendered in the Lindeman case by refusing to pay the full balance due. 
Whatley answered, generally denying Jones's claims and asserting equitable
estoppel, fraud, and illegality as affirmative defenses.  Whatley also
counterclaimed, alleging negligent misrepresentation, breach of fiduciary duty,
and violations of the Deceptive Trade and Practices Act (DTPA).  He sought
cancellation of the transactions, a declaration that all fees were "null
and void," actual and punitive damages, and attorney's fees.  This case
was filed as Cause Number 06-06-0038 in the 267th Judicial District Court,
Calhoun County, Texas.  Tried to the bench, the trial court entered a
take-nothing judgment against Jones on his quantum meruit claim.  The trial
court also concluded that Jones breached a contract, participated in instances
of misrepresentation, and breached his fiduciary duty in Whatley's
countersuit.  Without finding damages, the trial court awarded Whatley
"attorney's fees in the amount of $7,500, plus expert attorney's fees of
$2,400."  The trial court filed findings of fact and conclusions of law. 
This appeal followed.

II. 
Discussion

By three issues, Jones challenges the
trial court's findings of fact and conclusions of law.  Specifically, the
relevant findings and conclusions about which he complains relate to Jones
seeking relief in this litigation only on quantum meruit, the applicability of
the clean hands doctrine, and Whatley's attorney's fee awards.

A. 
Standard of Review

1.  Findings of Fact








An appellate court reviews the trial
court's findings of fact for legal and factual sufficiency.  BMC Software
Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); Corpus
Christi Housing Auth. v. Lara, 267 S.W.3d 222, 226 (Tex. App.—Corpus
Christi 2008, no pet.).  When a reporter's record is part of the appellate
record, findings of fact are not conclusive on appeal, even if unchallenged.  Zac
Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987).     








In our review of the factual sufficiency
of the evidence, we must consider and weigh all of the evidence, and we will
set aside a verdict only if the finding is so against the great weight and
preponderance of the evidence, that it is clearly wrong and unjust.  Ortiz
v. Jones, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam).  Before reversing
on a factual-sufficiency point of error, the court of appeals must clearly
state why the finding of fact is not supported by the evidence.  Id.

In reviewing for legal sufficiency of
the evidence, we consider the evidence in the light most favorable to the
verdict.  See AutoZone, Inc. v. Reyes, 272 S.W.3d 588, 592 (Tex. 2008)
(per curiam).  The test for legal sufficiency "must always be whether the
evidence at trial would enable [a] reasonable and fair-minded [fact finder] to
reach the [result] under review."  City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005).  Legal sufficiency review must consider evidence
favorable to the finding if a reasonable fact finder could, and disregard
evidence contrary to the finding unless a reasonable fact finder could not.  Id. 
The fact finder is the sole judge of the credibility of the witnesses and the
weight to be assigned to their testimony.  Id. at 819.  We may sustain a
legal sufficiency challenge only when:  (1) the record discloses a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital
fact; (3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact.  King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003).

An appellant may challenge the
sufficiency of an implied finding.  See Castano v. Wells Fargo Bank, 82 S.W.3d
40, 42 (Tex. App.—San Antonio 2002, no pet.).  We conduct our review of
sufficiency challenges to implied findings under the same standards of review
that govern sufficiency challenges to jury findings or a trial court's findings
of fact.  Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989) (per
curiam); see also Charles Clark Chevrolet Co. v. Garcia, No.
13-08-00633-CV, 2010 Tex. App. LEXIS 2522, at *8-9 (Tex. App.—Corpus Christi
Apr. 8, 2010, no pet.) (mem. op.).

2.  Conclusions of Law

The trial court's conclusions of law are
reviewed de novo.  BMC Software Belgium, 83 S.W.3d at 794; Lara,
267 S.W.3d at 226.  We independently evaluate a trial court's conclusions to
determine their correctness, and we will uphold conclusions on appeal if the
judgment can be sustained on any legal theory supported by the evidence.  In
re Moers, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no
pet.).  The appellant may not challenge a trial court's conclusions of law for
factual insufficiency; however, the reviewing court may review the trial
court's legal conclusions drawn from the facts to determine their correctness. 
Templeton v. Dreiss, 961 S.W.2d 645, 656 n.8 (Tex. App.—San Antonio
1998, pet. denied). 

B. 
Applicable Law

Quantum meruit is an equitable remedy
that "'is based upon the promise implied by law to pay for beneficial
services rendered and knowingly accepted.'" Vortt Exploration, Inc. v.
Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990) (quoting Truly v.
Austin, 744 S.W.2d 934, 936 (Tex. 1988)).  Founded on unjust enrichment,
quantum meruit "will be had when non-payment for the services rendered
would 'result in an unjust enrichment to the party benefitted by the
work.'"  Id. (quoting City of Ingleside v. Stewart, 554
S.W.2d 939, 943 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.)). 

A party seeking an equitable remedy,
such as quantum meruit, must come to court with "clean hands."  In
re Gamble, 71 S.W.3d 313, 325 (Tex. 2002) (Baker, J., concurring); Truly,
744 S.W.2d at 938; Omohundro v. Matthews, 161 Tex. 367, 381, 341 S.W.2d
401, 410 (1960).  This clean hands doctrine requires that one who seeks equity,
does equity; equitable relief is not warranted when the plaintiff has engaged
in unconscionable, unjust, or inequitable conduct with regard to the issue in
dispute.  In re Francis, 186 S.W.3d 534, 551 (Tex. 2006); Thomas v. McNair,
882 S.W.2d 870, 880 (Tex. App.—Corpus Christi 1994, no writ).

The clean hands doctrine is not,
however, absolute.  Omohundro, 341 S.W.2d at 410.  It should not be
applied unless the party asserting the doctrine has been harmed and the wrong
complained of cannot be corrected without the application of the doctrine. 
City of Fredericksburg v. Bopp, 126 S.W.3d 218, 221 (Tex. App.—San
Antonio 2003, no pet.); Thomas, 882 S.W.2d at 880; see also Omohundro,
341 S.W.3d at 410 (setting out that the party complaining that his opponent is
in court with "unclean hands . . . must show that he himself has
been injured by such conduct" and "the wrong must have been done to
the defendant himself and not to some third party"); Afri‑Carib
Enters., Inc. v. Mabon Ltd., 287 S.W.3d 217, 222 (Tex. App.—Houston [14th
Dist.] 2009, no pet.) (explaining that the trial court cannot apply the clean
hands doctrine unless "the misconduct at issue is connected to the subject
of the litigation and the party asserting the defense has been seriously harmed
by the misconduct").

C. 
Quantum Meruit








By his first issue, Jones challenges the
trial court's finding that he "elected to proceed only on the equitable
theory [of] [q]uantum [m]eruit."  While conceding that he informed the
trial court during his opening statement that he was seeking recovery of his
legal fees based only on quantum meruit, Jones contends that the evidence shows
he proceeded on breach of contract and only alternatively on quantum meruit.

The complained-of finding is, in effect,
a finding that Jones abandoned his contract claim.  This determination involves
a question of law.  See In re Shaw, 966 S.W.2d 174, 177 (Tex. App.—El
Paso 1998, no pet.).  Therefore, the trial court incorrectly designated it as a
finding of fact.  See Ray v. Farmers' State Bank, 576 S.W.2d 607, 608
n.1 (Tex. 1979).  The trial court's designation, however, is not controlling,
and we will treat the finding of abandonment as a conclusion of law and review
it accordingly.  See In re Unborn Child, 153 S.W.3d 559, 561 (Tex. App.—Amarillo
2004, pet. denied) ("[E]ven where the trial court designates some matters
findings of fact and others to be conclusions of law, the designation is not
controlling on appeal.") (citing Ray, 576 S.W.2d at 608, n.1; McAshan
v. Cavitt, 149 Tex. 147, 154, 229 S.W.2d 1016, 1020 (1950)).

In this case, Jones sued Whatley for
breach of contract and on the equitable theory of quantum meruit.  Now, in
support of his contention that he proceeded on both theories, Jones refers us
to the following trial testimony:

Q.        [Defense
Counsel] But you're asking Mr. Whatley to pay for your tactical decision. 
That's the truth, isn't it?

 

A.        [Jones]
No, Sir.  No, sir.  I'm asking Mr. Whatley to pay me like he agreed to pay me
for the time that I spent on his behalf.

 

. . . .

 

Q.        No,
but you're trying to collect more money than a jury said you were entitled to,
correct?

 

A.        No,
sir.  I'm trying to collect whatever is fair and right.

 

Jones also refers us to the following colloquy he had
with the trial court:  When the trial court asked whether he and Whatley ever
reduced the agreement to writing, Jones responded, "No, because at all
times up until the time that the judgment became final, he and I both, I
thought, were on the same page that it was entirely an hourly rate basis
decision."  Finally, Jones relies on the following statement made during
his closing argument:  "My entire time has been on the basis of what we
originally had to go by and what a fair and reasonable fee for the time that I
have spent is."

However, Jones continued his argument as
follows:

I offered long ago to
take—even though I told [Whatley] I had over $30,000 in actual time invested in
it that I hadn't been paid for, $35,000 to be exact, that I would still stick
with the jury verdict and I'd give him credit for the $5,000 that he had
already paid, which was $13,600.

 

In addition, in his opening statement before the trial
court, Jones clearly stated the following:  "The basis of the complaint,
as I say, is to simply recover, at this point on quantum meruit, for a
reasonable fee for the services that were previously rendered as well as for
attorney fees in conjunction with this suit to collect the attorney's
fees."  In addition, on cross-examination, Jones testified as follows:

Q.        Mr.
Jones, we're here today seeking equity, correct?

 

A.        I
would hope so.

 

Q.        Equity
equals fairness, correct?

 

A.        I
would hope so.

 

Finally, in his closing argument, Jones concluded:  "So
all I'm asking the Court to do is to decide what's fair and right, but I think
I'm entitled to be paid."








Formal amendment of the pleadings is not
required in order to show abandonment.  Sosa v. Central Power & Light Co.,
901 S.W.2d 562, 567 (Tex. App.—San Antonio 1995), rev'd on other grounds,
909 S.W.2d 893 (Tex. 1995).  In fact, a stipulation may form the basis for
abandonment.  See id.  "A stipulation is an agreement, admission,
or concession made in a judicial proceeding by the parties or their attorneys
respecting some matter incident thereto."  Laredo Med. Group v. Jaimes,
227 S.W.3d 170, 174 (Tex. App.—San Antonio 2007, pet. denied) (citing Shepherd
v. Ledford, 962 S.W.2d 28, 33 (Tex. 1998)). 

Reviewing the trial court's legal
conclusion to determine its correctness, see Templeton, 961 S.W.2d at
656 n.8; Dallas County v. Sweitzer, 881 S.W.2d 757, 763 (Tex. App.—Dallas
1994, writ denied), we conclude that the statement made by Jones during his
opening statement to the trial court constitutes a stipulation of abandonment. 
See Sosa, 901 S.W.2d at 567.  Furthermore, the facts from which the
conclusion was drawn, even those relied upon by Jones, support the correctness
of the conclusion that Jones abandoned his contract claim and proceeded only on
quantum meruit.  See Moers, 104 S.W.3d at 611.  Accordingly, we overrule
Jones's first issue.

D. 
Clean Hands Doctrine

By his second issue, Jones challenges
the trial court's findings and conclusions regarding the clean hands doctrine. 
He claims that the evidence is insufficient to establish the conclusions
related to the doctrine because the facts supporting those conclusions are
untrue.  We construe Jones's argument as a complaint that the evidence is
insufficient to support the trial court's implied finding that his actions
harmed Whatley.

Applying the clean hands doctrine to
Jones's request for equitable relief, the trial court made the following
conclusions of law:

4.         As
such under the Clean Hands Doctrine, which is a foundation of any equitable
claim [quantum meruit in this case], O.F. Jones exhibited unclean hands when he
testified that he has the case on a contingency fee contract, when he later
stated he knew that was untrue and it was to be an hourly fee; and

 

5.         His
conduct of testifying before the jury knowing he was misleading them, violated
the [clean] hands doctrine as well.  O.F. Jones received attorney['s] fees
initially from Mr. Whatley and out of the settlement proceeds.  Based upon his
inequitable conduct, he is not entitled to any additional fees.

 

The trial court based these conclusions on the following
findings of fact:

9.         O.F.
Jones testified in front of a Hondo jury that he had the case on a contingency
fee contract and asked the jury to award him more than $50,000.000 [sic],
without Mr. Whatley's consent.  During the bench trial, he admitted he was not
entirely truthful in the Hondo trial as he felt it would confuse the jury; and

 

10.       Mr.
Whatley did not agree to this fee and was surprised by O.F. Jones['s] testimony
of a full contingent fees.

 

Furthermore, in order to justify the application of the
clean hands doctrine, the trial court had to find that Jones's actions caused
serious harm to Whatley.  See Thomas, 882 S.W.2d at 880.  Because our
analysis of this implied finding is dispositive of the second issue, we will
address it first.

To prove up attorney's fees in the Lindeman
case, Jones provided the following testimony:

When
I undertook to represent Mr. Whatley, I told Mr. Whatley that my—the terms of
my representation, and it would be on a standard basis.  Normally, I have an
employment contract that I have clients sign.  But a lot of times when it's a
client that I represented in the past, sometimes that doesn't get done.  I
don't know, frankly, whether I had Mr. Whatley sign an employment contract or
not in this case.  If I did, I've misplaced it.  But it's possible that I
didn't actually have him sign one.

 

But
if I had had him sign one, it would have been on the standard form that I use,
which provides that we are to—my office is to be paid in this type of case a 25
percent contingent fee—if—if we're able to settle the case or conclude the case
before litigation begins.

 

And
in the event that we have to institute litigation and pursue litigation, then
that contingent fee is increased to 40 percent.  And the reason for that
percentage is because a lot of times these cases, you don't know until you get
into them what all is going to be involved.  You don't know until you get
finished with them how it's going to come out.  And a lot of times you start
off with something that you think is going this way, and you wind up going some
other direction before you get through.

 

There
are some of these cases of this type, frankly, that you win and some that you
lose.  And so the contingency sort of tends to offset the good ones from the
bad ones, very candidly.

 

As
a matter of fact, in this particular instance, I have now spent over 200 hours
of my time, prior to the time that we began trial here yesterday in handling this
case and its various issues and ramifications.  And of course, obviously, we've
had yesterday, and we'll have today, and some more time to be involved after
that.

 

However,
in this particular case, I frankly believe that at this point in time, there is
a reason to reduce that—that contingency a little bit.  And so what it would be—what
I think it should be, what would be a fair and reasonable fee under the
circumstances, and what I think is necessary to represent Mr. Whatley
adequately is—is one[-]third of the amount of the recovery.

 

Now,
what that basically means is—is this:  Mr. Whatley says that he thinks his
airplane was worth $157,500.  Mr. Welch has said that he thinks it's worth
$123,000.  Now he didn't include the paint job when he did that first appraisal
over there.

 

. . . .

 

It
will be up to the jury to decide which of those amounts to answer the value of
the aircraft.  Whatever amount that the jury puts down as being the value of
the aircraft, then for reasonable and necessary attorney fees through the trial
of this case, would be one[-]third of that amount, whatever that turns out to
be.

 

Now,
in addition to that, there's another little wrinkle in this case, and that is
that the defendant has the right to appeal this Court's decision to an appellate
court.  If they do, then they would appeal to the Court of Appeals
. . . .  And the lawyers would then have to do some additional
work in that appellate court.

 

I
have been in appellate courts throughout the time that I've been practicing law
on many occasion.  Some of them my choice, and some of them not my choice.  And
so I am familiar with the time that is required and the work that is required
to spend on an appeal in a case where you have a lot of contested issues.

 

And
in this particular case, it's my opinion that a reasonable fee to be incurred
by Mr. Whatley in the appellate court and the Court of Appeals would be
[$]15,000.

 

Now
once the Court of Appeals has decided the case, then the losing party there has
the right to file what's called a Petition for Writ of Error or Petition for
Review with the Supreme Court in Austin.  If either side does that, they'll be
about $3500 of work incurred in either preparing or answering that petition.

 

If
the Supreme Court sees fit to grant that petition and have oral argument before
that court, there will be another $3500 of time and expense incurred by—by both
sides, for that matter.

 

So
my—my testimony to you is that one-third of the amount of your answer to the
value of the aircraft plus appellate attorney fees of $15,000, [$]3500 and
[$]3500 on the question that you will be asked.  In my judgment, all of those
will be necessary to represent Mr. Whatley adequately, and they're all fair and
reasonable based on my experience in trying lawsuits for 47 years.

 

After determining that $93,334 would
"fairly and reasonably compensate" Whatley for his damages, the Lindeman
jury found that a reasonable fee for the necessary services of Whatley's
attorney rendered in preparation and trial of the Lindeman case was $18,600. 
See Lindeman, 2005 Tex. App. LEXIS 1078, at *15.  The jury awarded
"0" for any appeals taken.  See id. at *16-17.

In the present case, Jones provided the
following testimony explaining his rationale for presenting attorney's fees to
the Lindeman jury as he did:

Now,
the point that I was trying to make with the jury at that point in time was
this.  I was concerned about that jury and I was concerned that since Mr.
Lindeman was a local person and the City of Hondo obviously was a
tax-payer-funded local organization, I didn't want the jury to have any more
reason than possible to quibble with our evidence and our position.  It was to
Mr. Whatley's advantage, obviously, for the jury to return as high a number on
the value of his aircraft as we could get, but it also was important to both of
us for the jury to return a large number on the attorney fees because there
never was a contingent fee agreement.  Mr. Whatley's counsel, I think, came up
with the idea that there was, but Mr. Whatley said there wasn't and I've said
there wasn't.  There never was a contingent fee agreement.

 

I
did use the term "contingent" in referring to this, but there are two
different types of contingent fees, Your Honor.  One is a contingent fee where
you collect the money for your fee out of the money that the client gets, such
as in a car wreck case.  The other type of contingent fee is where it's
contingent upon the amount that it's to be.  In this case it was contingent
upon the answer of the jury to Question Number 1 and if the jury answered—well,
whatever the jury answered Question Number 1, then should have been the basis
for the answer to Question Number 2.  That didn't work out that way, but that's
what we were trying to do.

 

And
I was concerned that if I started talking about handling the case on an hourly
basis and I was telling the jury that I had 200 and some odd hours of time
invested in depositions and that there had been a number of other parties to
the lawsuit and a number of other lawyers involved, that the jury would go off
chasing rabbits and try to figure out who had paid what and how much had they
paid and who was actually responsible and could they get out of finding Mr.
Lindeman guilty.  And so my concern was that I wanted the jury to be—I wanted
it to be as simple as they could.

 

And
my premise to Mr. Whatley the night before was let's do it simple, let's keep
it simple and let's not get involved in all of the details of where the time
went or what it was for, let's just tell them that we want a third of the amount
of whatever they answer Number 1.  And that's what this testimony was designed
to do.

 

On cross-examination, when asked whether the contract was
an hourly-fee contract or a percentage-fee contract, Jones answered, "As
far as I was concerned it was an hourly fee [contract] the entire way
through. . . .  What I told the jury was that we were asking the
jury to find a percentage fee that Mr. Whatley and I would use to cover that
hourly determination, whatever that was."  And now, on appeal, Jones
agrees that the trial court's finding that "[t]he jury in Hondo found the
entire value of O.F. Jones legal service to be $18,600," is a correct
finding.

Having reviewed the record, we find no evidence that establishes Whatley
was harmed by Jones's actions, and Whatley points us to none.  Had the jury
calculated attorney's fees in the Lindeman case based on Jones's
argument that fees should be one-third of the amount of the aircraft's value
plus appellate fees, it would have awarded $31,000—one-third of the $93,000
damages found.  The jury clearly did not calculate fees using the percentage
suggested by Jones.  See Prati v. New Prime, Inc., 949 S.W.2d 552, 555
(Tex. App.—Amarillo 1997, pet. denied) (op. on reh'g) (pointing out that
because the mental processes by which a jury determines the amount of damages
is ordinarily not cognizable by an appellate court and where the law does not
provide a precise legal measure of damages, the amount is generally within the
discretion of the jury).  Rather, it awarded attorney's fees in the amount of
$18,600, an amount that the San Antonio Court of Appeals concluded, on appeal,
"was within the range of the testimony and supported by sufficient
evidence."  See Lindeman, 2005 Tex. App. LEXIS 1078, at *16.  Therefore,
we cannot conclude Whatley was harmed on this basis.

Moreover, Jones testified that he and Whatley would use the jury's
determination of attorney's fees in the Lindeman case to cover the
hourly determination and agreed that the trial court's finding—"[t]he jury
in Hondo found the entire value of O.F. Jones legal service to be $18,600"—is
a correct finding.  Based on these concessions, we cannot conclude Whatley was
harmed by Jones's actions.  Rather, Whatley benefited from Jones's actions
because Jones testified that his hourly fees totaled $35,000 and Whatley
acknowledged, on appeal, that Jones "had hourly time of $32,000 or so, at
the time of trial."

Therefore, assuming without deciding
that Jones came into court with unclean hands, we conclude, after considering and
weighing all of the evidence that the implied finding of harm, on which Whatley
had the burden, is factually insufficient because it is so against the great
weight and preponderance of the evidence, that it is clearly wrong and unjust. 
See Ortiz, 917 S.W.2d at 772.  Furthermore, considering the evidence
in the light most favorable to the verdict, see AutoZone, 272 S.W.3d at
592, the trial court could not have disregarded evidence contrary to the
implied harm finding, i.e., that Whatley was not harmed because the jury
awarded only $18,600 in attorney's fees which is approximately $15,000 less
than (1) the amount of fees that would have been awarded had the jury used the
recommended one-third percentage calculation, and (2) the acknowledged amount
of Jones's "hourly time."  See City of Keller, 168 S.W.3d at
827.  Having considered this evidence, the trial court could not have
determined that Whatley was harmed, such that the clean hands doctrine should
have been applied.  See id.  Because the evidence establishes
conclusively the opposite of the implied finding of harm, it is also legally
insufficient.  See King Ranch, 118 S.W.3d at 751.

Based on the above analysis, we conclude
that because the facts do not support a finding of harm, the trial court's
conclusions regarding the application of the clean hands doctrine were not
justified.  See Templeton, 961 S.W.2d at 656 n.8; Thomas, 882
S.W.2d at 880 (citing Omohundro, 341 S.W.2d at 410).  We sustain Jones's
second issue. 

E. 
Award of Attorney's Fees on Whatley's Counterclaims

By his third issue, Jones challenges the
trial court's award of attorney's fees to Whatley.  He asserts that there is no
evidence to support this award.

The trial court concluded that Jones's
actions constituted "a material breach of contract as [pleaded] in the
counter[]suit."  Without finding damages, the trial court further
concluded that "[t]his breach of contract gives rise to the award of
attorney['s] fees to Mr. Whatley."  The court also concluded, again
without finding damages, that "the several incidences of inequitable
conduct of . . . Jones . . . constituted misrepresentation
and breach of fiduciary duty, which were properly plead[ed] in the
countersuit[,] and each of which also support[s] the award of attorney['s] fees
to Mr. Whatley."[6]

An award of attorney's fees in a breach
of contract claim is appropriate only if a party prevails and recovers damages.
See Tex. Civ. Prac. & Rem.
Code Ann. ' 38.001(8) (West 2008)
(allowing recovery of attorney's fees in valid claims involving oral or written
contracts); State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 437
(Tex. 1995).  Assuming without deciding that Whatley prevailed on his breach of
contract claim, that claim nonetheless provides no legal basis for his recovery
of attorney's fees because Whatley recovered no damages on that basis.

In addition, the trial court awarded no
damages on Whatley's misrepresentation and breach of fiduciary duty claims.  See
Fed. Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991)
(identifying elements of negligent misrepresentation as follows:  (1) a
defendant provided information in the course of his business, or in a
transaction in which he had a pecuniary interest; (2) the information supplied
was false; (3) the defendant did not exercise reasonable care or competence in
obtaining or communicating the information; (4) the plaintiff justifiably
relied on the information; and (5) the plaintiff suffered damages
proximately caused by the reliance); Beck v. Law Offices of Edwin J. Terry,
Jr., P.C., 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.) (setting
out the elements of a breach-of-fiduciary-duty claim as (1) the existence of
the fiduciary relationship; (2) a breach of that duty by the attorney
defendant; (3) that causes; and (4) damages to the plaintiff). 
Therefore, we must reject an award of attorney's fees on the basis of these
claims also.[7]

Assuming without deciding that Whatley's
counterclaims were properly pleaded and tried to the court, we conclude
that Whatley is not entitled to attorney's fees on his counterclaims.  We
sustain Jones's third issue as to the trial court's award of Whatley's
attorney's fees.

By this issue, Jones also complains of the trial court's $2400 award for
Whatley's expert attorney's fees.  Because Whatley concedes that he is not
entitled to this award, we also sustain Jones's third issue in this regard.[8]

III.  Conclusion

 

            Accordingly, we reverse the trial court's
take nothing judgment against Jones in his suit for attorney's fees and remand
for proceedings consistent with this opinion to determine the amount of Jones's
attorney's fees based on quantum meruit only, without applying the cleans hands
doctrine.  Furthermore, we reverse the judgment of the trial court awarding
Whatley his attorney's fees on his counterclaims and his expert attorney
witness's fees and render judgment that Whatley take nothing on his claims for
attorney's fees.

 

 

                                                                                                             NELDA
V. RODRIGUEZ

                                                                                                             Justice

 

Delivered
and filed the 

9th
day of June, 2011.









[1]As this is a memorandum opinion and
the parties are familiar with the facts, we will not recite them here except as
necessary to advise the parties of the Court's decision and the basic reasons
for it.  See Tex. R. App. P. 47.4.





[2]The record reflects that Jones also
represented Whatley in two other lawsuits that involved the loss of this plane.





[3]Although it is disputed as to who
wanted to appeal the matter, Whatley or Jones, it is undisputed that when the
appeal was taken to the San Antonio Court, Jones represented Whatley and agreed
not to charge him appellate fees for his representation.





[4]The San Antonio Court noted that
"Whatley's attorney [Jones] testified that a fair and reasonable fee would
be one-third of 'whatever amount that the jury puts down as being the value of
the aircraft.'"  Whatley v. Lindeman, Inc. No. 04-04-00351-CV, 2005
Tex. App. LEXIS 1078, at *15-16 (Tex. App.—San Antonio Feb. 9, 2005, pet.
denied) (mem. op.).





[5]
After deducting the settlement credit of $106,000 from the total damages and
attorney's fees award of $111,934.00, the net amount of the judgment that
Whatley received was $5,934.00.  This is supported by Whatley's testimony that
the net amount, after everything was settled, was "fifty-something hundred
dollars" and by his agreement that the insurance company paid that amount.

 





[6]
The trial court did not award attorney's fees based on Whatley's deceptive
trade practices claim, if any.





[7] We note that "if a client seeks
the remedy of equitable fee forfeiture and proves a breach of fiduciary duty by
the attorney[, unlike attorney's fees,] the client may obtain that
[fee-forfeiture] remedy without the need to prove causation or damages if the
court [concludes that] the attorney's conduct was a 'clear and serious breach
of duty to his client,' and, most importantly, that forfeiture of the fee (or
some portion of it) was 'necessary to satisfy the public's interest in
protecting the attorney-client relationship.'"  Beck v. Law Offices of
Edwin J. Terry, Jr., P.C., 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no
pet.) (quoting Burrow v. Arce, 997 S.W.2d 229, 246 (Tex. 1998)). 
Factors that form the basis of the court's decision regarding a fee forfeiture
request include, "without limitation, whether or when the misconduct
complained of occurred, the attorney's mental state at the time, and the
existence or extent of any harm to the client."  Burrow, 997 S.W.2d
at 246.

 

In this case,
Whatley pleaded for forfeiture of Jones's attorney's fees.  And the court, in
effect, ordered partial forfeiture.  The trial court found that the alleged
misconduct occurred, but made no finding of Jones's mental state at the time or
of the existence or extent of any harm to Whatley.  See id.  The trial
court did conclude the following:

 

O.F. Jones received attorney fees
initially from Mr. Whately and out of the settlement proceeds.  Based upon
[Jones's] inequitable conduct [when he testified that he had the case on a
contingency fee contract and later stated he knew that was untrue and it was to
be an hourly fee and when he testified before the jury knowing he was
misleading them], he is not entitled to any additional fees.

 

Independently evaluating this conclusion of law de novo to
determine its correctness, see BMC Software Belgium, 83 S.W.3d at
794 (Tex. 2002); Corpus Christi Housing Auth. v. Lara, 267 S.W.3d 222,
226 (Tex. App.—Corpus Christi 2008, no pet.); In re Moers, 104 S.W.3d
609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.), even were we to
conclude that the facts support a conclusion that there was a "clear and
serious breach of duty" to Whatley, we cannot conclude that Jones is not
entitled to any additional fees—that he must forfeit additional fees.  There
are simply no facts in the record supporting a conclusion that partial fee
forfeiture was necessary to satisfy the public's interest in protecting the
attorney-client relationship.  See Burrow, 997 S.W.2d at 246; Templeton
v. Dreiss, 961 S.W.2d 645, 656 n.8 (Tex. App.—San Antonio 1998, pet.
denied).





[8]
We decline to address Jones's remaining arguments as they are not dispositive
of this appeal.  See Tex. R. App.
P. 47.1.